**AMERICAN CYANAMID COMPANY,**
**Petitioner,**

**v.**

**Elliot L. RICHARDSON, Secretary of**
**Health, Education and Welfare,**
**et al., Respondents.**

**No. 71–1388.**

United States Court of Appeals,
First Circuit.

Heard Dec. 14, 1971.

Decided Dec. 16, 1971.

**510**

James D. St. Clair, with whom Harold Hestnes, Hale & Dorr, Boston, Mass., Robert M. Goolrick, Steptoe & Johnson, Washington, D. C., and Bertram H. Lebeis, Pearl River, N. Y., were on petitioner's memorandum in support of motion for stay pending review.

Howard Epstein, Atty., Dept. of Justice, and Eugene M. Pfeifer, Atty., Dept. of H. E. W., with whom Richard W. McLaren, Asst. Atty. Gen., Gregory Hovendon, Chief Consumer Affairs Section, Peter Barton Hutt, Asst. Gen. Counsel, Alvin L. Cottlieb, Deputy Asst. Gen. Counsel, and Joanne S. Sisk, Atty., Dept. of H. E. W., were on memorandum in opposition to petitioner's motion for a stay pending review.

COFFIN, Circuit Judge.

This motion comes before me as a single judge, in accordance with F.R.A.P 18, requesting a stay pending review of an order of the Commissioner of Food and Drugs (FDA), effective as of December 17, 1971, requiring petitioner, American Cyanamid Company, to cease the manufacture and distribution and to recall outstanding stocks of Achrocidin Compound Tablets and Achrocidin Compound Syrup, fixed-combination prescription drugs consisting principally of an infection-attacking antibiotic (tetracycline), an antihistamine (chlorothen citrate in the tablets, pyrilamine maleate in the syrup) and discomfort-relieving analgesics (phenacetin and salicylamide in both compounds). They have been produced and distributed to the medical profession in large quantities for fifteen years by petitioner's Lederle Laboratories Division (Lederle).

Hearing was had and briefs and a voluminous appendix were submitted and studied. My conclusion is that petitioner does not have a reasonable likelihood of ultimately prevailing and that the application for a stay must therefore be denied. *Cf.* Automatic Radio Mfg. Co. v. Ford Motor Co., 390 F.2d 113 (1st Cir. 1968). I concede that denial of a stay may well cause irreparable harm to Lederle. Not only will there be substantial economic loss during and after the period of any stay but perhaps an incalculable loss of good will. Therefore, because of the substantial consequences flowing from my decision in this complicated regulatory field, I shall give lengthier treatment to the facts and issues than is generally appropriate at this stage of proceedings.

Procedural Background

Following the Drug Amendments of 1966, the FDA contracted with the National Academy of Sciences-National Research Council (NAS–NRC) to establish panels for the purpose of reviewing most available drugs. Acting on the reports of the panel which reviewed Achrocidin Tablets and Syrup and found them "ineffective as a fixed combination",[1]

---

1. This phrase was developed by NAS–NRC during the course of its Drug Efficacy Study for FDA and was explained in its 1969 Final Report as follows :

"The rating 'Ineffective as a fixed combination' was brought into use to deal rationally with certain combinations of drugs, notably combinations of

the FDA published on September 12, 1969, 34 F.R. 14342, notice of its intention to amend its regulations to bar a number of products, including Achrocidin Tablets and Syrup, which contained antibiotics in combination with antihistamines, analgesics, and/or decongestants. It called on those who might be adversely affected to submit pertinent data which "must . . . consist of adequate and well-controlled studies not previously submitted."

Lederle promptly responded with its objections,[2] but did not submit a "controlled study" because it felt that to conduct one would be difficult, would involve much time and money, and would show only that the Achrocidin components are as effective in combination as if separately administered—no more and no less. On May 8, 1970, the FDA issued regulations clearly setting forth its requirement that in the absence of adequate and well-controlled clinical investigations, a hearing would not be held. 32 F.R. 7520. The next event of record occurred on September 12, 1970, when the FDA published a finding that the evidence previously submitted by Lederle was not "substantial evidence of effectiveness" and a proposed regulation which would withdraw authorization for fifteen drug combinations including both Achrocidins. Once again, those adversely affected were invited to file objections and request a hearing, showing reasonable grounds therefor, which should include a "well-organized and full-factual analysis of the clinical and other investigational data". 35 F.R. 14392.

Lederle's response, in October, 1970, was to request a hearing on the basis of no more than an elaboration of its objections to the NAS–NRC panel report; to claim lack of notice of issues, prior adjudication, improper delegation, and departure from prior standards; and to argue that each component retained its effectiveness, and that the drug package was convenient and helped avoid patient error. The documentary evidence supporting these arguments was in the form of two general professional journal articles on drug interactions; five similar affidavits from internists endorsing the effectiveness and convenience of Achrocidin; an affidavit from a professor of pharmacology to the effect that controlled clinical investigations of Achrocidin are unnecessary and would be difficult, expensive, and time-consuming; an affidavit from a professor of pharmacy stating that there was some statistical correlation between the number of prescription medications required of a patient and his misuse of them and a journal article on prescription misuse by the affiant;[3] two affidavits by Led-

two or more antibiotics, one or more of which when administered alone is acknowledged to be effective for the cited indication. It is a basic principle of medical practice that more than one drug should be administered for the treatment of a given condition only if the physician is persuaded that there is substantial reason to believe that each drug will make a positive contribution to the effect he seeks. Risks of adverse drug reactions should not be multiplied unless there be overriding benefit. Moreover, each drug should be given at the dose level that may be expected to make its optimal contribution to the total effect, taking into account the status of the individual patient and any synergistic or antagonistic effects that one drug may be known to have on the safety or efficacy of the other. On these grounds, multiple therapy using fixed dose ratios determined by the manufacturer and not by the physician is, in general poor practice."

2. It made the following points: that there has been widespread physician acceptance, that the NAS–NRC panel evidenced distrust of physicians' abilities to use the products for susceptible infections only and for periods of proper duration, that Achrocidin had an excellent safety record, that the chance of error in following multiple prescriptions was eliminated, that there was no evidence of adverse interaction among the components, and that the components were "therapeutically available".

3. While this affidavit singled out the factor of multiple medications in misuse of prescriptions, the affiant's journal article

erle employees; and a survey of 274 physicians, virtually all of whom—by checking off the appropriate boxes on a Lederle questionnaire—expressed their beliefs that Achrocidin was safe and effective, and should remain available for prescription use.[4]

On February 18, 1971, the FDA published a proposed statement of policy elaborating on its requirement that each ingredient in a combination drug must contribute to its total effect, and saying in part that "the advantage of the combination must obtain for all conditions for which it is labeled, for the various dose schedules recommended, for the duration of dosage suggested, and for most patients for which the produce [sic] is recommended." 36 F.R. 3126, 3127. While twenty-nine drug manufacturers were among those who responded to this proposed statement, Lederle did not.

As a result of further consideration, the FDA issued a final policy statement on October 15, 1971 to the effect that each component in a fixed-combination drug must make a contribution to the claimed effects and "the dosage of each component (amount, frequency, duration) [must be] such that the combination is safe and effective for a significant patient population requiring such concurrent therapy . . . ." 36 F.R. 20037, 20038.

Finally, on November 17, 1971, the FDA issued the order attacked in this proceeding, concluding that legal objections which had been lodged against the proposed decertification were insubstan-

tial and that Lederle had failed to present "substantial evidence of effectiveness" for its Achrocidin products which would require a hearing. 36 F.R. 21879. It applied its earlier announced standard of requiring that "each drug in the combination provides an advantage, as combined, for all doses, for the duration suggested, and for a significant patient population." It rejected the individual affidavits and the survey essentially because none of the opinions as to effectiveness was based on an "adequate and well-controlled clinical investigation", saying that such was required "precisely because of the variables involved". 36 F.R. at 21880. It pointed out that the antibiotic component of Achrocidin could only be effective against its intended target, an upper respiratory infection, when present in the blood in high concentrations for a sustained period, while the other components of Achrocidin are directed at relatively transitory symptoms such as headache and runny nose. To continue use of Achrocidin for its antibiotic when the other symptoms have vanished would be to use unnecessary medication. Moreover, the FDA added that even if all such symptoms are present, proper treatment requires different amounts and timing from those provided by the described dosages of the Achrocidin Tablets and Syrup: too small an amount of analgesics is provided at too infrequent an interval; and there is no evidence that the small caffeine component of the tablets has any relief effect at all.[5]

made it clear that several factors are relevant, that much misuse is intentional, and that a prime factor of misunderstanding by the patient could be the inadequacy of instructions received from the physician and pharmacist.

4. The survey is not a model of sophisticated sampling. The basis for selection seems obscure. For example, of the 274 doctors to respond, only 4 were from New England—one from Bridgeport, Connecticut; one from Skowhegan, Maine; and two from Newport, Vermont. The one-page questionnaire asked four simple questions—whether the doctor used Achrocid-

in, and whether he thought it was safe, effective, and should remain available. A significant minority of "comments" indicated usage for colds, children, and pregnant women—all being at least prima facie suspect uses. A dominant comment was convenience for doctor and patient. A persistent theme was that FDA action was bureaucratic ivory tower meddling in medicine.

5. An FDA affidavit adds that the dosage of antihistamine in the Achrocidin tablets is twice the daily dosage recommended for its administration as a single agent.

The Legal Issues

Lederle argues at great length that it had no notice of the criteria it had to satisfy until the final policy statement of October 15, 1971, was issued. It contends that the September, 1969, notice and the September, 1970, order were merely generic attacks against all fixed-combination drugs and that it had no way of knowing that a specific demonstration of the effectiveness of Achrocidin was called for. It also claims that the FDA's reliance on the absence of "adequate and well-controlled clinical investigations" was unfair since it had no notice that this requirement would be applied to Achrocidin.

In the light of the extensive procedural background cited above, I see very little likelihood of substantiating these claims. The essential criteria formulated in the final policy statement of October 15, 1971, had appeared as early as 1969 in the Drug Efficacy Study discussion of "ineffective as a fixed combination", see n. 1 *supra*. They were more formally set forth in the FDA order of February 18, 1971, to which Lederle made no response. The claim that the September, 1969, notice of intent to amend the regulations and the September, 1970, order were only generic attacks evades my understanding. The notice named fourteen specific drugs, made by eight manufacturers, and invited response from all who might be adversely affected. Only Lederle and one other manufacturer responded. Lederle's lengthy response was almost entirely devoted to demonstrating the effectiveness of Achrocidin and the contribution of each component. In its response to the September, 1970, order, the testimonials and the survey of 274 doctors related specifically to Achrocidin. Very little in either set of responses could be deemed a defense of fixed-combination drugs in general.

Lederle's claim of being surprised at the application to Achrocidin of the requirement of clinical investigations seems equally strained. The 1969 notice called for "well-controlled studies". Lederle answered that they would not be useful. The May 8, 1970, regulations were devoted to the requirement of clinical investigations. The September 1970, order again called for data based on such investigations. And again Lederle responded that clinical studies would be difficult and were unnecessary.

Lederle next urges that the FDA's refusal to grant a full evidentiary or trial-type hearing prior to publication of the final decertification of Achrocidin vitiates, both on statutory (§ 5 of the Administrative Procedure Act, 5 U.S.C. § 554) and constitutional due process grounds, the entire decertification process and makes especially important the preservation of the status quo pending judicial review. The company's argument, in essence, is that its written submissions amply demonstrated the existence of a significant factual dispute as to the "safety and efficacy" of Achrocidin and stated "reasonable grounds" for objection to the FDA's proposed action. *See* 21 U.S.C. § 357(f). The first and most obvious objection to this contention is contained in the FDA regulation, 35 F.R. 720, finally promulgated on May 8, 1970, which states that "[a] request for a hearing may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine and substantial issue of fact that requires a hearing." 35 F.R. at 7252. The regulation further provides that only "adequate and well-controlled" clinical investigations are sufficient to raise such an issue of fact. *Id.* The validity of this threshold requirement in decertification proceedings under § 507(f) of the Act, 21 U.S.C. § 357(f), has recently been upheld in cases arising in the Second and Sixth Circuits. Pfizer, Inc. v. Richardson, 434 F.2d 536 (2d Cir. 1970); Upjohn Co. v. Finch, 422 F.2d 944 (6th Cir. 1970). The basic due process and statutory arguments pressed by Lederle in challenging the validity of the requirement of "adequate and well-controlled clinical investigations" before the right to a hearing attaches under §

507(f) were extensively discussed and resolved in favor of the FDA in those cases.

Lederle, while reserving its right to challenge before the full court the soundness of these authorities, has here urged that the issues raised in this case are significantly different from those decided in *Upjohn* and *Pfizer*. Lederle claims first that the FDA regulation requiring substantial evidence in the form of "well-controlled clinical investigations", 35 F.R. 7250–53, in a proceeding under 21 U.S.C. § 357(f), was impliedly repealed as to fixed-combination prescription drugs by the FDA's "Statements of General Policy or Interpretation" of October 15, 1971. 36 F.R. 20037. I am not persuaded that the mere failure of the October 15 statement to reiterate the substantial evidence requirement was intended to repeal it, inasmuch as (1) the statement purports to be no more than an indication of general policy and (2) 21 U.S.C. § 357(h) requires, although it does not define, substantial evidence. On my present view, the FDA would have been more explicit had it intended to substitute a new definition of substantial evidence.

From the fact that both components of the drugs banned in *Upjohn* and *Pfizer* were antibiotics while Achrocidin's components include only one antibiotic supplemented by analgesics and an antihistamine, Lederle concludes that the present litigation raises a new issue. I am not presently disposed to view this admitted difference of fact as in any way undermining the FDA's authority to demand a well-controlled clinical investigation as a prerequisite to a hearing.

I therefore conclude that Lederle's chances of prevailing on the merits are not so substantial as to justify my granting a stay pending review. While the loss to be suffered in the interim may indeed be substantial, I also note that all products competitive with Achrocidin whose manufacturers have accepted the final order will be removed from the market as of its effective date.

Motion denied.