**BRISTOL LABORATORIES, etc.,**
**Petitioner,**

v.

**Elliot L. RICHARDSON, Secretary of**
**Health, Education and Welfare,**
**et al., Respondents.**

**No. 71–1394.**

United States Court of Appeals,
First Circuit.

Dec. 23, 1971.

Gilbert H. Weil, New York City, with whom Edward B. Hanify, Boston, Mass., was on motions and memorandum in support for petitioner.

Howard S. Epstein and Ira H. Leesfield, Attys., Dept. of Justice, and Eugene M. Pfeifer, Atty., Dept. of Health, Education and Welfare, for respondents.

ON MOTIONS FOR RETRANSFER, FOR LEAVE TO ADDUCE ADDITIONAL EVIDENCE, AND FOR STAY PENDING REVIEW

COFFIN, Circuit Judge.

This is a petition by a drug manufacturer, Bristol Laboratories, Division of Bristol-Myers Co. (Bristol), for a stay pending review of an order of the Commissioner of Food and Drugs (FDA) withdrawing certification of four of its fixed-combination prescription drugs—Tetrex-APC with Bristamin Capsules, Tetrex-AP Syrup, Syndecon Tablets and Syndecon for Oral Solution. The context of the present application is substantially similar to that detailed in American Cyanamid Co. v. Richardson, 1 Cir., 456 F.2d 509, opinion dated December 16, 1971, in which I denied a similar application for a stay. Hearing was had on the present application and briefs and the certified record were submitted and reviewed.

Petitioner points to several distinctions between its position and American Cyanamid's which, it vigorously asserts, justify different procedural and substantive treatment of the two applications. Bristol's major procedural challenge is directed to the propriety of the Third Circuit's transfer, pursuant to 28 U.S.C. § 2112(a), of its application for a stay to this court, there being no other jurisdictional tie between Bristol and this circuit. Bristol contends that the FDA Order of November 17, 1971, 36 F.R. 21879, review of which was sought here on December 10, 1971, by American Cyanamid, and in the Third Circuit on December 15, 1971, by Bristol, is not really a unitary order based on a unitary record within the intendment of § 2112(a), but is rather a series of orders, involving different manufacturers, drugs, and evaluations. It relies principally on Far East Conference v. Federal Maritime Commission, 119 U.S.App.D.C. 110, 337 F.2d 146 (1964), cert. denied, 379 U.S. 991, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965), where petitions addressed to substantially similar but separate orders were not subjected to transfer, and Midwest Video Corp. v. United States, 362 F.2d 259 (8th Cir. 1966), where separate orders were addressed to different aspects of the cable television industry. It acknowledges that it has discovered no case in which the proposition was accepted that an order, single in form, may be treated as plural for purposes of the transfer statute.

The legislative history of 28 U.S.C. § 2112 sheds little direct light on the question: when, for transfer purposes, is an order not one but several? I hesitate to ignore the unitary label given the order at issue here, as well as the antecedents of that order in 1970 and 1969. My hesitation becomes conviction when I consider that the exercise engaged in by the FDA by means of these orders, encompassing a group of fifteen fixed-combination drugs having common characteristics and subject to common criticisms, was undertaken to achieve rational and comprehensive modification of FDA regulations governing certification of "drugs for oral use in man containing antibiotics in combination with antihistamines and/or analgesics and/or decongestants", 21 C.F.R. Parts 146a, 146c, 148m, and 148n. Two of the drugs here involved fall within Part 146a; the other two within Part 146c, as did those of American Cyanamid. Both American Cyanamid and Bristol have unavailingly sought FDA hearings on the acceptability of their drugs, the FDA concluding that neither had supplied the kind of data based on well-controlled clinical investigations which 21 C.F.R. § 130.12(a) (5) requires as a prerequisite to a hearing. While the approaches of American Cyanamid and Bristol in attempting to substantiate their claims for their products are different, the primary bases of their attack on the decertification order are legal and identical. To consider the order atomized because of its application to several products, although those products are substantially similar in composition and therapeutic theory and their use presented a common problem dealt with

in a single decertification proceeding, does not appear to me to comport with either the letter or spirit of § 2112(a). I accordingly deny the motion for retransfer.

Bristol next argues that if I deny its motion to retransfer, it is still entitled to an order requiring the FDA to allow the introduction of additional evidence (1) to test the accuracy of facts adverted to in the November 17, 1971, order, (2) to test whether the order really relies on such facts, and (3) to determine if the order is unreasonable and arbitrary in applying to Bristol the regulatory requirement of well-controlled clinical studies of safety and effectiveness. Here as in *American Cyanamid*, the FDA ruled that Bristol had not presented substantial evidence of effectiveness which would entitle it to a hearing. As indicated in my opinion denying a stay to American Cyanamid, I consider it likely that the FDA will be found to have acted within its power in requiring data based on adequate and well-controlled studies and that the drug companies affected by the November 17 Order will be found to have been given ample opportunity to rebut the considerations upon which the general standard was predicated. Bristol's motion to adduce new evidence is merely another mode of attacking the authority of FDA to require as a sine qua non data based on "adequate and well controlled clinical investigations".

While the data in *American Cyanamid* consisted of testimonials and a physician survey, Bristol argues that its case warrants different treatment in that it did proffer some clinical studies. It submit-

ted to the FDA two biocomparability studies of Tetrex-AP Syrup and Tetrex-APC. The studies, made on two groups of sixteen males apparently in the fall of 1969, but not submitted to the FDA until October 1970, purported to demonstrate that the antibiotic component of two of their fixed-combination drugs was as fully available in the blood as when separately administered. But the bioavailability of the other components was not tested either singly or in combination and no data were submitted as to Bristol's two Syndecon products. Nor did Bristol conform with the testing protocol requirements of 21 CFR § 130.12(a) (5), issued on May 8, 1970.* Since the FDA relied on the failure of Bristol's studies in these respects to conform to the "clinical studies" requirement, I find Bristol's attempt to distinguish *American Cyanamid* unpersuasive. Finally, while the full court might rule that the FDA could not apply its regulatory standard to Bristol's drugs, I think it unlikely that the FDA will be found to have exceeded its authority in refusing to depart from it. So thinking, I deny the motion for leave to introduce additional evidence.

██ It is apparent that, apart from the transfer issue and the fact that Bristol relies on the above-mentioned biocomparability studies of the antibiotic component in two of its drugs, this case raises the same issues as did *American Cyanamid*. I accordingly similarly conclude that, while imminent withdrawal of the questioned drugs from the market will cause substantial loss to Bristol, it has not demonstrated sufficient likelihood of ultimately prevailing on the merits to warrant a stay.

* The FDA Order of November 17, 1971 observed, with reference to Bristol's two studies:
"This data does not relate to the bioavailability of the other ingredients in addition to tetracycline. Biocomparability may be accepted in lieu of clinical studies only for a product identical to one which has previously been established as efficacious by adequate clinical studies. No adequate clinical studies exist establishing the efficacy of any of these combination drugs."