NATURAL RESOURCES DEFENSE COUNCIL, INC., Petitioner,

v.

U. S. ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Administrator, U. S. Environmental Protection Agency, Respondents,

Chemical Manufacturers Association, American Iron & Steel Institute, Edison Electric Institute, et al., Intervenors.

AMERICAN PETROLEUM INSTITUTE, Petitioner,

v.

U. S. ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Administrator, U. S. Environmental Protection Agency, Respondents.

DUVAL CORPORATION, Freeport Sulphur Company (a Division of Freeport Minerals Company), Jefferson Lake Sulphur Company (a Division of Occidental Chemical Company), and Texasgulf, Inc., Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

The FERROALLOYS ASSOCIATION, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

PENNZOIL COMPANY, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, and Douglas M. Costle, Administrator, Respondents.

CITIZENS FOR A BETTER ENVIRONMENT, an Illinois Not-For-Profit Corporation, and Bill Forcade, Petitioners,

v.

Douglas COSTLE, Individually, and as Administrator of the United States Environmental Protection Agency, Respondent.

The AMERICAN IRON AND STEEL INSTITUTE, Allegheny Ludlum Industries, Inc., Armco, Inc., Bethlehem Steel Corporation, Cyclops Corporation, Inland Steel Company, Jones & Laughlin Steel Corporation, National Steel Corporation, Republic Steel Corporation, and United States Steel Corporation, Petitioners,

v.

Douglas M. COSTLE, Administrator, U. S. Environmental Protection Agency, and U. S. Environmental Protection Agency, Respondents.

KIMBERLY–CLARK CORPORATION, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

MINING AND RECLAMATION COUNCIL OF AMERICA, INC., Petitioner,

v.

Douglas M. COSTLE, as Administrator, Environmental Protection Agency, and the United States Environmental Protection Agency, Respondents.

AVTEX FIBERS, INCORPORATED, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

EDISON ELECTRIC INSTITUTE, et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

AMERICAN MINING CONGRESS, Duval Corporation, Everest Minerals Corporation, Jefferson Lake Sulphur Company (a Division of Occidental Chemical Company), Mobil Oil Corporation, and Texasgulf, Inc., Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

The DOW CHEMICAL COMPANY, Petitioner,

v.

Douglas M. COSTLE, Administrator, and the Environmental Protection Agency, Respondents.

KERR–McGEE NUCLEAR CORPORATION, et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, and Douglas Costle (as the Administrator of the Environmental Protection Agency), Respondents.

CHEMICAL MANUFACTURERS ASSOCIATION, et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

FORD MOTOR COMPANY, Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Administrator, United States Environmental Protection Agency, Respondents.

STATE OF WEST VIRGINIA, Petitioner,

v.

U. S. ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Administrator, Respondents.

TEXAS OIL & GAS CORP., Petitioner,

v.

U. S. ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Administrator, Respondents.

The LUBRIZOL CORPORATION, Petitioner,

v.

Douglas M. COSTLE, Administrator and United States Environmental Protection Agency, Respondents.

CITIZENS FOR A BETTER ENVIRONMENT, an Illinois Not-For-Profit Corporation, and Bill Forcade, Petitioners,

v.

Douglas COSTLE, Individually and as Administrator of the United States Environmental Protection Agency, Respondent.

Nos. 80–1607, 80–1660, 80–1720, 80–1723, 80–1733, 80–1740, 80–1741, 80–1809, 80–1821, 80–1837, 80–1889, 80–1928, 80–1932, 80–1934, 80–1975, 80–1989, 80–1999, 80–2004, 80–2007 and 80–2114.

United States Court of Appeals, District of Columbia Circuit.

Nov. 4, 1980.

Alan W. Eckert and Richard G. Stoll, Jr., Washington, D. C., were on respondents' motion to designate a court to determine venue.

Theodore L. Garrett and John T. Smith, II, Washington, D. C., were on response to respondents' motion to designate a court to determine venue, for intervenor, Chemical Mfrs. Ass'n.

Before MIKVA and EDWARDS, Circuit Judges (Chief Judge WRIGHT was a member of the panel, but did not participate.)

## MEMORANDUM OF OPINION
PER CURIAM.

The above-captioned cases involve numerous challenges to the Consolidated Permit Regulations (CPRs)[1] issued by the Environmental Protection Agency (EPA) pursuant to four separate statutes which EPA is charged with administering.[2] EPA previously had filed a motion asking this court to designate a "surrogate" court to determine venue for the challenges to the CPRs which were promulgated pursuant to the National Pollutant Discharge Elimination System (NPDES) portion of the Clean Water Act (CWA).[3] By a per curiam order dated September 11, 1980, and amended on September 12, 1980 (Sept. 11–12 order), we resolved that motion by stating that venue for review of all the CPRs was proper in this

---

1. 45 Fed.Reg. 33287 (May 19, 1980) (amending 40 C.F.R. §§ 122–125 (1979)).

2. *See* statutes cited in text accompanying notes 4–6 *infra*.

3. 33 U.S.C. § 1251 *et seq.*

court, and that the cases should proceed forthwith. We directed EPA to request the Fourth and Fifth Circuits (the other courts in which simultaneously filed petitions for review of the NPDES-related regulations are pending) to transfer any such petitions to this court. By further orders of this court dated October 3 and October 7, 1980, we directed all the parties to file briefing proposals and related motions in this court by October 31, 1980, with replies to such motions to be filed no later than November 14, 1980. Because of the importance of the Sept. 11–12 order to these cases and because of the rapid track on which we are requesting the parties to move, we supplement our orders with this Memorandum of Opinion.

## I.

In 1978, President Carter signed Executive Order 12033, which required agencies such as the EPA to reform their procedures for issuance of regulations.[4] Under that Executive Order, agencies were directed to fashion "simple and clear" regulations that "achieve legislative goals effectively and efficiently" and do not "impose unnecessary burdens on the economy, on individuals, on public or private organizations, or on State and local governments."[5] In response to the presidential directive, the EPA issued the CPRs under review in these cases. These regulations comprise a comprehensive program designed to streamline permit procedures under five pollution-control programs involving four statutes: (1) the Hazardous Waste Management (HWM) permit program under Subtitle C of the Resource

Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq.; (2) the Underground Injection Control (UIC) permit program under the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300f et seq.; (3) the NPDES and (4) section 404 Dredge or Fill permit programs under the CWA; and (5) some procedural requirements for the Prevention of Significant Deterioration (PSD) program under the Clean Air Act (CAA), 42 U.S.C. § 7401 et seq.

Three of the four acts under which the CPRs were promulgated require exclusive judicial review in the United States Court of Appeals for the District of Columbia. 42 U.S.C. § 6976(1) (1976) (RCRA, § 7006(1)); 42 U.S.C. § 300j–7(a)(1) (1976) (SDWA, § 1448(a)(1)); 42 U.S.C. § 7607(b)(1) (Supp. II 1978) (CAA, § 307(b)(1)). Only the CWA allows for review of EPA's actions "by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business upon application of such person." CWA, § 509(b)(1), 33 U.S.C. § 1369(b)(1) (1976).[6]

Most of the CPRs are procedural rules designed to implement permitting under these separate programs. The permitting rules of these regulations are closely interrelated, although some of the rules are labeled specifically according to the program they are designed to implement.[7] Some of the substantive rules governing each program were promulgated simultaneously with the Consolidated Permit Program but others were not.[8]

---

**4.** 43 Fed.Reg. 12661 (Mar. 24, 1978).

**5.** *Id.*

**6.** The NPDES aspect of the CPRs may, however, be reviewable in a district court rather than a court of appeals. *See* note 10 *infra*.

**7.** *See, e.g.,* 45 Fed.Reg. 33435 (May 19, 1980) (to be codified at 40 C.F.R. § 122.28) ("Additional conditions applicable to all RCRA permits"). Many of the regulations, however, apply to more than one program. *See, e.g.,* 45 Fed.Reg. 33425 (May 19, 1980) (to be codified at 40 C.F.R. § 122.7) ("Conditions applicable to all permits").

**8.** *See, e.g.,* 44 Fed.Reg. 32854 (June 7, 1979) (amending 40 C.F.R. §§ 6, 115, 121–125, 402–403) (substantive and procedural regulations for NPDES permits) (1979 regulations, which are the subject matter of earlier suits still pending in the Fourth Circuit, *see* discussion in text at page 396, *infra*); 45 Fed.Reg. 33512 (May 19, 1980) (amending 40 C.F.R. § 125) (revised NPDES standards); 45 Fed.Reg. 12722 (Feb. 26, 1980) & 45 Fed.Reg. 33066 (May 19, 1980) & 45 Fed.Reg. 47832 (July 16, 1980) (to be codified at 40 C.F.R. §§ 260–265) (HWM substantive regulations); 45 Fed.Reg. 42472 (June 24, 1980) (to be codified at 40 C.F.R. §§ 122, 146) (UIC substantive regulations); parts of 45 Fed.Reg. 52676 (Aug. 7,

While still in the process of preparing the CPRs, the EPA overhauled its permitting procedure under the NPDES program, issuing revised regulations on June 7, 1979. 44 Fed.Reg. 32854. The EPA anticipated that petitioners seeking review of these regulations (which, as we pointed out, can be reviewed in any circuit under the CWA), would "race to the courthouse," in an attempt thus to designate venue in the court of first filing under 28 U.S.C. § 2112(a) (1976). To deal with the anticipated problem, the agency published racing regulations and a "trigger" time: the regulations were to become ripe for judicial review at 1:00 p. m., Eastern Daylight Time (EDT), seven days after their appearance in the Federal Register. Thus, on June 14, 1979, various petitioners did indeed race to the courthouse, and petitions were eventually filed in the Third, Fourth, Fifth, Ninth, Tenth, and D. C. Circuits.

After some petitions for review were dismissed as premature,[9] the agency determined that VEPCO, American Petroleum Institute (API) and the Natural Resources Defense Council (NRDC) had filed the earliest petitions simultaneously in the Fourth, Fifth, and D. C. Circuits respectively. Because of the simultaneous filings, no court of first filing existed, and the EPA could not properly file the record as required by 28 U.S.C. § 2112(a) (1976).

The EPA then filed a motion in the three courts of appeals asking that a "surrogate" court of first filing be designated. See text accompanying notes 11–14 infra. The courts of appeals conferred and the Fourth Circuit was designated by lot as the court to determine venue for review of the 1979 NPDES regulations. The Fifth and D. C. Circuits, as well as the courts of appeals not involved in the three-way tie, then transferred the 1979 petitions to the Fourth Circuit. Those petitions were consolidated with the pending Fourth Circuit cases, VEPCO v. EPA, 655 F.2d 534 (4th Cir. 1979).

When the EPA issued the CPRs involved here, the petitioners in the Fourth and Fifth Circuits moved to amend their 1979 petitions to include their simultaneously filed challenges to the NPDES-related portions of the 1980 Consolidated Permit Regulations. The CPRs extensively revise and supersede the 1979 regulations. The Fifth Circuit dismissed one such motion without prejudice before transferring the 1979 petition to the Fourth Circuit. See API v. EPA, No. 79–2433 (5th Cir., filed June 14, 1979). (The Fifth Circuit is currently considering motions filed by the EPA and NRDC to transfer API's 1980 petition to the D. C. Circuit. See API v. EPA, No. 80–3413 (5th Cir., filed June 2, 1980).) The Fourth Circuit granted VEPCO's motion to amend its 1979 petition on July 22, 1980, and in that order consolidated several challenges to the CPRs.

Most recently, the Fourth Circuit issued an order denying, without prejudice, motions to transfer the NPDES-related cases to this court. In that order the Fourth Circuit indicated that it will consider the issue of venue and transfer at an oral argument to be held during its November sitting. VEPCO v. EPA, 655 F.2d 534 (4th Cir., 1980, memorandum order).

## II.

We are mindful of the concerns of those parties who wish to have the NPDES regulations reviewed by the court of appeals of their choosing.[10] Indeed, the CWA itself

1980) (amending 40 C.F.R. §§ 51.24, 52.21) (PSD substantive regulations).

Petitions for review of all these regulations have been filed. See, e.g., Shell Oil Co. v. EPA, No. 80–1532 (D.C.Cir., filed May 19, 1980) (challenging certain HWM regulations); American Petroleum Institute (API) v. EPA, No. 80–1875 (D.C.Cir., filed July 30, 1980) (challenging UIC regulations); Alabama Power v. EPA, No. 80–2224 (D.C.Cir., filed Oct. 6, 1980) (challenging PSD regulations); The Ferroalloys Ass'n v.

EPA, No. 80–2255 (D.C.Cir., filed Oct. 10, 1980) (challenging certain HWM regulations).

**9.** See Virginia Power & Light Co. (VEPCO) v. EPA, 610 F.2d 187 (4th Cir. 1979).

**10.** Some ambiguity exists as to whether the 1979 NPDES regulations are reviewable in a court of appeals under § 509(b)(1) of the CWA, 33 U.S.C. § 1369(b)(1) (1976), or in a district court. Therefore several of the petitioners

indicates that Congress did not intend to designate any particular court of appeals as an expert forum. But the CPRs and the technical rules they implement are interrelated and were developed on the same administrative record. Moreover, the agency's attempt to consolidate the various programs was a direct response to an Executive Order demanding a simplification of complex regulatory programs. Severing the regulations for judicial review in different courts would disserve the agency's goal of developing a unified and more efficient permitting program, whatever perceived benefit such severance might have for petitioners who seek review in another circuit. Thus, we remain convinced that all of the CPRs can be more efficiently reviewed by a single forum. Because three of the four organic statutes that the regulations implement require review in this court, we previously concluded in Sept. 11–12 order, and reaffirm here, that this court is the proper court of venue.

Congress has provided an automatic first-filing rule to solve the problem arising when parties file petitions for review of the same agency order in different courts of appeals. *See* 28 U.S.C. § 2112(a) (1976).[11] However, the court of first filing is authorized to transfer all actions to the most convenient forum, thus somewhat ameliorating the mechanical operation of the rule.

The legislative history of section 2112(a) indicates that Congress intended the first-filing rule to cure a weakness in many earlier acts providing for appellate review of agency orders. Under some of those earlier laws, a court of appeals did not obtain jurisdiction over a petition until the agency filed the record. Therefore if par-

ties filed petitions for review of the same order in different courts, the agency could select the forum for review by filing the record in the court of its choosing. S.Rep. No.2129, 85th Cong., 2d Sess. 2–4 (1958), U.S.Code Cong. & Admin.News 1958, p. 3996.

Congress fashioned the first-filing rule as a more neutral and random determinant of a forum in cases in which several circuits may have concurrent jurisdiction to review agency action. But unfortunately the rule "has resulted in ... the substitution of forum shopping by counsel for petitioners by the exercise of technological ingenuity in achieving first filing." *United Steelworkers of America v. Marshall*, 592 F.2d 693, 696 (3d Cir. 1979).

In order to eliminate the "unseemly" activity of parties literally racing to the courthouse, several agencies, including the EPA, have begun to publish "racing regulations" and a "trigger time" with some of their orders, announcing in advance the exact date and time that the order will become ripe for judicial review. While such a practice has successfully eliminated the earlier racing, it has created a different problem for courts by allowing "dead heats" to occur: precisely simultaneous filings in more than one circuit court. Neither the statute nor its legislative history indicate what courts faced with this predicament should do.

Several courts have dealt with simultaneously filed petitions in a pragmatic fashion. Through informal agreement among judges of the various circuits, one court has sometimes been designated as the "surro-

have also filed complaints in district court. *See NRDC v. Costle*, 655 F.2d 318 (D.D.C.); *American Iron & Steel Inst. (AISI) v. Costle*, No. 79–1218 (W.D.Pa.); *Chemical Manufacturers Ass'n (CMA) v. EPA*, No. 79–0184 (W.D. Va.); *Appalachian Power v. Costle*, No. 79–0188 (W.D.Va.); *API v. Costle*, No. 80–1858 (W.D.La.).

11. The statute provides, in pertinent part, that: If proceedings [to obtain judicial review] have been instituted in two or more courts of appeals with respect to the same order the

agency ... concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.
28 U.S.C. § 2112(a) (1976).

gate" court of first filing. *See United Steelworkers of America v. Marshall, supra; American Public Gas Association v. FPC*, 555 F.2d 852, 861 (D.C.Cir.1976). The "surrogate" court then may consider motions to transfer the petitions "for the convenience of the parties in the interest of justice." 28 U.S.C. § 2112(a). This is what happened with the simultaneously filed challenges to the 1979 NPDES regulations. *See* discussion at page 396, *supra.* That solution is not available for the simultaneously filed challenges which affect this litigation because this court cannot transfer most of the CPR cases to any other forum.

The EPA indicated in the Federal Register that the CPRs would become ripe for review at 1:00 p. m., EDT, fourteen days after their publication. The regulations appeared on May 19, 1980, and thus became ripe for review on June 2, 1980. At that time petitions for review were filed simultaneously in the Fourth, Fifth, and D. C. Circuits. The D. C. Circuit petition, filed by NRDC, challenged the Consolidated Permit Program in its entirety. *NRDC v. EPA*, No. 80–1607 (D.C.Cir.). The petitions in the Fourth and Fifth Circuits, filed by VEPCO and API respectively, challenge only the NPDES aspect of the CPRs. *See VEPCO*

*v. EPA*, 655 F.2d 534 (4th Cir.); *API v. EPA*, No. 80–3413 (5th Cir.).[12]

On July 16, 1980, the EPA filed a motion in all three circuits to designate a court to determine venue for the NPDES-related CPRs.[13] In late August and early September, this court conferred with judges in the Fourth and Fifth Circuits, but no agreement was reached regarding which court should be designated the "surrogate" court of first filing. This motions panel thereupon issued its order stating that proper venue for review of the CPRs in their entirety lay in this court.[14]

As we have said, section 2112(a) does not dictate any particular procedure by which to resolve ties in races to the courthouse. It does, however, indicate that judicial challenges to "the same order" must be heard in one court of appeals. Because many of the CPRs can be reviewed only in this court, venue for review of the entire order is proper here.

Courts have held agency actions far more divisible than the issuance of the CPRs to be the "same order" under § 2112(a).[15] Petitions for review of a single agency action should be consolidated to prevent "simultaneous participation in proceedings in more than one circuit." *ACLU*

12. Indeed, petitioners in those circuits could not have raised challenges to other aspects of the CPRs which arise under the other three statutes. *See* statutes cited in text accompanying notes 4–6, *supra.*

13. Because most of the regulations which NRDC and most other petitioners challenge must be reviewed in this court, the agency properly filed the certified index to the record in No. 80–1607 on July 11, 1980.

14. The order, as amended, read as follows:

On consideration of respondents' motion to designate a court to determine venue, and the response thereto, it is

ORDERED that the U. S. Court of Appeals for the District of Columbia be designated as the court to determine venue for the simultaneously filed petitions for judicial review of the Consolidated Permit Regulations, 45 Fed. Reg. 33287 (May 19, 1980) (amending 40 C.F.R. §§ 122–125 (1979)), filed at precisely 1:00 p. m., Eastern Daylight Time, on June 2, 1980.

The regulations reflect the Agency's attempt, prompted by a Presidential order (Executive Order 12044, 43 Fed.Reg. 12661 (March 23, 1978)), to devise a unified permitting program that would fulfill the statutory mandates and deadlines of four separate environmental protection statutes. Judicial efficiency requires that the cases involving the regulations be heard in this court to avoid duplicating judicial review. The cases shall therefore proceed forthwith in this court.

The respondent Agency is hereby directed to file motions in the Fourth and Fifth Circuits requesting that the June 2, 1980, petitions be transferred to this court for consolidation with the above-captioned case.

*NRDC v. EPA*, No. 80–1607 (D.C.Cir., Sept. 11–12, 1980) (per curiam order).

15. *See Bristol Laboratories v. Richardson*, 456 F.2d 563 (1st Cir. 1971); *Public Service Comm'n of the State of New York v. FPC*, 472 F.2d 1270 (D.C.Cir.1972); *ACLU v. FCC*, 486 F.2d 411 (D.C.Cir.1973); *BASF Wyandotte v. Costle*, 582 F.2d 108 (1st Cir. 1978).

*v. FCC,* 486 F.2d 411, 414 (D.C.Cir.1973).[16] Moreover, courts have recognized that the statutory reference to the "same order" should be broadly construed. Factors that courts have considered relevant in deciding whether agency actions are the same order include the unitary form of the order,[17] the agency's own characterization of its action, the origin of the actions in the same or interrelated proceedings before the agency, and the necessity of the agency's filing a single record in more than one court.

In *BASF Wyandotte v. Costle,* 582 F.2d 108 (1st Cir. 1978), the EPA had issued an interim regulation that was promulgated in final form over a year later. The First Circuit considered two possible tests for determining whether the interim and the final regulations were the "same order" within the meaning of § 2112(a): (1) whether the regulations were similar in substance, and (2) whether both regulations resulted from the "same or interrelated proceedings." 582 F.2d at 112. The court rejected the similarity test, indicating that such a test "requires considerably more knowledge of the often complicated substantive content of the orders" than would a "same proceedings" test. *Id.* The two regulations, the court held, were the same order because, although issued more than a year apart, they "arose from the same administrative proceedings." *Id.*[18]

The facts in *BASF Wyandotte* in some ways parallel the situation that exists with respect to the 1979 NPDES regulations and the 1980 CPRs. The 1979 regulations were final "interim" regulations, intended by the agency to be effective only until the appearance of the CPRs. 44 Fed.Reg. 32855 (June 7, 1979). Thus, were it not for the interrelationship among the CPRs, many of which must be reviewed in this court, it is conceivable that some NPDES-related portions of those regulations could be considered the "same order" as the 1979 regulations. If those were the only portions under attack, the proper venue might be in the Fourth Circuit. This line of reasoning offers no solution, however, because the CPRs are themselves a single order, and review of other portions is only available in this court. We find no authority for splitting up a single order for review in different circuits merely because of that order's procedural history.

█ The CPRs fit the definition of the "same order" for purposes of § 2112(a). They were issued as a single order, and the EPA expressed its desire to see the entire program reviewed in one proceeding.[19] Further, the CPRs emerged from a single agency rulemaking, were proposed as a single program subject to one comment period and one set of hearings, and are supported by a single administrative record.[20] The

**16.** This court has held that separate orders, each giving rise to a petition on different subject matter, were nonetheless the "same order" because they were issued during the course of the same proceeding and implemented "a single, multi-faceted agency undertaking." *ACLU v. FCC,* 486 F.2d 411, 414 (D.C.Cir.1973). The court granted the Commission's motion to transfer the ACLU's petition to the Ninth Circuit, noting that bifurcating review might force the agency "to file the same record in different circuits ... resulting in ... fragmentary review by different courts." *Id.*

**17.** In *Bristol Laboratories v. Richardson,* 456 F.2d 563 (1st Cir. 1971), the FDA issued an order withdrawing certification of several different drugs. The First Circuit rejected Bristol's argument that the order was really a series of orders involving different manufacturers, drugs, and evaluations. Refusing to bifurcate the order for purposes of judicial review, the court relied on the agency's unitary label

and its consolidation of actions as the basis for holding the actions to be the "same order." The court also noted that Bristol had "acknowledge[d] that it has discovered no case in which the proposition was accepted that an order, single in form, may be treated as plural for purposes of the transfer statute." 456 F.2d at 564.

**18.** *Cf. Public Service Comm'n of the State of New York v. FPC,* 472 F.2d 1270 (D.C.Cir.1972) (court noted importance of reviewing orders arising from interrelated proceeding in one forum).

**19.** 45 Fed.Reg. 26984 (April 22, 1980) (EPA's racing regulations for review of CPRs).

**20.** Many of the petitioners in the Consolidated Permit and related cases object to the agency's characterization of these regulations as "consolidated" because they apply to five distinct

format and modus issuendi were intended to further an important public policy as expressed by Executive Order.

At present only four of the more than thirty-five petitions pending in this court challenge the NPDES aspect of the CPRs. NRDC (No. 80–1607) and Citizens for a Better Environment (CBE) (No. 80–1740) have launched broad procedural challenges to the regulations in their entirety. CBE specifically claims that the CPRs do not provide for adequate participation by the public and the states in the permitting process. Pursuant to this court's Sept. 11–12 order, two courts of appeals have transferred petitions here which encompass challenges to the NPDES aspect of the regulations.[21]

To the extent that this court's review of the NPDES-related petitions might conflict with another circuit's review, surely the preferable course would be to have all the petitions decided by one forum. But this court is the only court with jurisdiction to decide *all* the Consolidated Permit cases, and we see no alternative to doing so if the "same order" precedents are to be followed. If the 1980 NPDES cases remain in another circuit, and this court decides similar questions in the Consolidated Permit cases, a potential exists for duplicative judicial review and conflict between circuits on the issues. We hope that, despite the peculiar jurisdictional situation, as this litigation proceeds such an unfortunate result can be avoided.

This motions panel will issue timely and appropriate orders setting out a format for realignment, consolidation, and briefing in No. 80–1607, *et al.*, and the related "substantive" regulation cases.[22]

and complicated substantive programs. Several petitioners have moved this court to sever certain challenges to the CPRs and consolidate them with the judicial challenges to the "substantive" program regulations. These motions are still pending so we express no determinative opinion on those motions now. But however these petitions are grouped for briefing, argument, and decision, we believe that the entire complicated proceeding can be more efficiently handled by one court reviewing the entire order.

21. The Seventh Circuit transferred *CBE v. Costle,* No. 80–1870 (7th Cir.); No. 80–2114 (D.C. Cir.) (petition essentially duplicates the challenge filed by CBE in this circuit), to this court. The Tenth Circuit transferred *Kennecott Corp. v. EPA* (10th Cir.); No. 80–2279 (D.C.Cir.), to this court as well.

22. Should another court of appeals later transfer additional petitions to this court, we will consider adjusting the briefing schedule ultimately to be established in these cases to accommodate the transferred parties.

