**AMERICAN IRON AND STEEL INSTITUTE, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**NATIONAL STEEL CORPORATION et al., Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

Nos. 75–2124, 75–2148.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1976.

Decided Oct. 5, 1976.

522

David McNeil Olds, Blair S. McMillin, Thomas C. Wettach, Thomas J. Duman, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., David S. Watson, Peter G. Veeder, Frank J. Clements, Thorp, Reed & Armstrong, Pittsburgh, Pa., Max N. Edwards, Richard E. Schwartz, Collier, Shannon, Rill & Edwards, Washington, D. C., Richard E.

Nolan, Henry H. Korn, Davis, Polk & Wardwell, New York City, for petitioners.

Peter R. Taft, Asst. Atty. Gen., Alfred T. Ghiorzi, Donald W. Fowler, Dept. of Justice, Robert V. Zener, Gen. Counsel, Ridgway M. Hall, Jr., Special Asst. to the Gen. Counsel, Environmental Protection Agency, Washington, D. C., for respondent.

Robert C. Barnard, Charles F. Lettow, Edward G. Modell, Washington, D. C., for amici curiae Diamond Shamrock Corp., et al., Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., of counsel.

Before ADAMS, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This petition seeks our review of certain regulations issued by the Environmental Protection Agency (EPA). The challenged regulations under certain circumstances allow adjustments to be made in permitted discharges if significant amounts of pollutants are found in a plant's intake water. Concluding that the statute which governs our jurisdiction does not provide for review of these regulations at this time, we dismiss the petition and accordingly do not reach the merits of petitioners' arguments.

### I

The American Iron and Steel Institute (AISI), a trade association of iron and steel manufacturers and producers, and National Steel Corporation, a member of AISI, have petitioned this Court to review certain regulations, 40 C.F.R. §§ 125.24(c)[1] and 125.28[2] (the "Net-Gross Regulations") promulgated by EPA pursuant to the Federal Water Pollution Control Act Amendments of 1972 (the Act), 33 U.S.C. §§ 1251–1376 (Supp.1976). These regulations provide, among other things, that effluent limitations[3] must be expressed in gross terms, but may be adjusted for some individual point sources which are unable to meet the required standards because of the presence of pollutants in intake water. Petitioners argue that these regulations are unconstitutional[4] and that their issuance was not authorized by the Act. They also contend that various provisions of the regulations

---

1. 40 C.F.R. § 125.24(c) provides:

   Except as provided in § 125.28 effluent limitations included in permits shall be expressed in gross terms.

2. 40 C.F.R. § 125.28 provides:

   (a) The Regional Administrator shall adjust the effluent limitations or standards in permits to reflect credit for pollutants in the applicant's water supply if the source of the applicant's water supply is the same body of water into which the discharge is made and if:

   (1) The applicable effluent limitations and standards contained in Subchapter N of this Chapter specifically provide that they shall be applied on a net basis; or

   (2) The applicant demonstrates to the Regional Administrator, prior to the issuance, denial, or modification of his permit, that specified pollutants which are present in the applicant's intake water will not be removed by wastewater treatment systems designed to reduce process wastewater pollutants and other added pollutants to the levels required by applicable limitations or standards.

   (b) Effluent limitations or standards adjusted pursuant to this section shall be calculated on the basis of the amount of pollutants present in the water after any water supply treatment steps have been performed by or for the applicant. Effluent limitations or standards shall not be adjusted when the pollutants which would be discharged, if credit were allowed, would vary either chemically or biologically from the pollutants found in the applicant's water supply.

   (c) Any permit which includes effluent limitations or standards adjusted pursuant to this section shall also contain conditions requiring the permittee to conduct additional monitoring i. e. flow and concentration of the pollutants therein in the manner and locations determined appropriate by the Regional Administrator for those specific pollutants for which the effluent limitations or standards have been adjusted.

3. For an overall discussion of the Act's requirements pertaining to effluent limitations, see this Court's opinion in American Iron and Steel Institute v. EPA, 526 F.2d 1027 (3d Cir. 1975).

4. In essence, the petitioners' arguments focus on alleged violations of the fifth amendment. They argue that the regulations violate their rights involving equal protection and substantive due process.

are arbitrary, capricious, and not based on adequate evidence in the record.[5]

## II

The same "net-gross" controversy presented here was previously addressed (together with other issues) in *American Iron and Steel Institute v. EPA*, 526 F.2d 1027 (3d Cir. 1975) [*AISI I*]. There the Court reviewed the Effluent Guidelines and Standards for the Iron and Steel Manufacturing Point Source Category, 40 C.F.R. § 420 (1975). For reasons unrelated to the issues raised by the present petition, the regulations considered in *AISI I* were remanded to the agency for reconsideration and for promulgation of effluent limitation guidelines.[6]

The petitioners in *AISI I* argued, as do the petitioners here, that the issuance of effluent limitations expressed in gross terms violated the fifth amendment's due process clause and that their promulgation was beyond the authority granted to EPA by the Act. They maintained that all effluent limitations must be expressed in net terms, i. e., that all pollutants present in the intake water must be subtracted from the gross amounts of pollutants discharged after processing and that only the net (the

difference between these figures) could be regulated. In *AISI I*, that argument was answered by the Court's statement that while it was neither practical nor necessary to convert all effluent limitations to net terms, "any individual point source should be entitled to an adjustment in an effluent limitation applicable to it if it can show that its inability to meet the limitation is attributable to significant amounts of pollutants in the intake water." 526 F.2d at 1056.[7]

■ Because these regulations were not before us in *AISI I* (*see* n. 6 *supra*) it would appear appropriate for us to meet the merits of petitioners' arguments at this time were it not for the jurisdictional considerations raised by EPA. If we are without jurisdiction to review the challenged regulations, then we can only "announce that fact and do no more." *Local 1498, American Federation of Government Employees v. American Federation of Government Employees*, 522 F.2d 486, 492 (3d Cir., 1975). Hence, such a determination would preclude our reaching and deciding the substance of petitioners' claims.

EPA has maintained throughout these proceedings that we have no jurisdiction to review the Net-Gross Regulations in the

---

5. Petitioners' specific challenges concern the following aspects of the regulations: 1. the burden of proof which applicants for permits must satisfy; 2. the disallowance of credit for intake pollutants where the water is not discharged into the same body of water from which it was obtained; 3. the disallowance of credit where the pollutants discharged vary chemically or biologically from the pollutants contained in intake waters; and 4. the disallowance of credit for treatment of intake water where water supply treatment facilities are used prior to processing.

6. EPA has not yet complied with those directions. We observe also that the Net-Gross Regulations, which are the subject of the instant petition, were issued after argument in *AISI I* but before the date of that decision. Hence, these regulations in their present form were neither discussed nor ruled upon in this Court's prior opinion.

7. Since our decision in *AISI I*, three other Circuits have addressed this problem.

In *Hooker Chemicals and Plastics Corp. v. Train*, 537 F.2d 620 (2d Cir. 1976), effluent

limitations for the phosphate manufacturing point source category were reviewed. The Second Circuit observed that whatever defect might have inhered in gross effluent limitations was apparently remedied by the Net-Gross Regulations, which are the subject of the petition here. *Id.* at 633.

In *Applachian Power Co. v. Train*, 545 F.2d 1351 (4th Cir. filed July 16, 1976), which involved the effluent limitations for the steam electric power generating point source category, the Fourth Circuit held that translation of all effluent limitations into net terms was not required, but that in applying the gross values a credit for all intake pollution must be given. at 1377–1378.

In *American Petroleum Institute v. EPA*, 540 F.2d 1023 (10th Cir., filed August 11, 1976), involving the effluent limitations for the petroleum refining point source category, the Tenth Circuit held that the Net-Gross Regulations are a satisfactory answer to the argument that all effluent limitations must be expressed in net terms. at 1034–1035.

absence of action by the Administrator issuing or denying a permit. 33 U.S.C. § 1369(b)(1)(F) (Supp.1976). Since no permit has either been issued or denied, EPA initially sought to dismiss the petition by motion. When that motion was referred to this panel, EPA then vigorously argued before us that the petition should be dismissed because the statute provides no grant of jurisdiction whereby we may consider the petitioners' contentions. We therefore turn to this threshold jurisdictional argument.

### III

Petitioners claim that we have jurisdiction to review the Net-Gross Regulations under 33 U.S.C. § 1369(b)(1)(E) (Supp.1976).[8] The relevant portion of subsection (b)(1)(E), which they claim provides jurisdiction in this Court, reads: "Review of the Administrator's action . . . in approving or promulgating any effluent limitation . . . may be had . . . in the . . . Court of Appeals of the United States . . . ."[9] Focusing on the review afforded to an effluent limitation, the petitioners argue that the Net-Gross Regulations constitute effluent limitations or at least effluent limitation guidelines.

EPA, on the other hand, has consistently argued that the Net-Gross Regulations do not constitute effluent limitations or guidelines but rather relate solely to the terms and conditions specified in permits issued to individual point sources. EPA substantiates this argument by pointing to the fact that when it promulgated the Net-Gross Regulations it cited as its authority only sections of the Act concerned with the permit system,[10] and not sections relating to effluent limitations.

### A

In support of their jurisdictional contention that review in this Court is presently available, petitioners first argue that EPA's characterization of the Net-Gross Regulations as "something other than effluent limitations" should not be given conclusive effect. This characterization arises from the authority cited by EPA in support of its issuance of the Net-Gross Regulations. EPA cited as its authority three particular sections of the Act which pertain only to the *permit* system rather than to the promulgation of effluent limitations (*See* n. 10 *supra*).

We agree with petitioners that an agency's interpretation of the law which

---

**8.** 33 U.S.C. § 1369 (§ 509 of the Act) is entitled Administrative Procedures and Judicial Review. Subsection (b)(1) states:

(b)(1) Review of the Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title, and (F) in issuing or denying any permit under section 1342 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such applica-

tion is based solely on grounds which arose after such ninetieth day.

**9.** As appears in the full text of 33 U.S.C. § 1369(b)(1)(E), *see* n. 8 *supra,* subsection (E) also provides for review where the Administrator has approved or promulgated "other limitations" under §§ 1311, 1312, or 1316. Inasmuch as petitioners do not rely upon this portion of subsection (E), no purpose would be served by setting forth the text of those sections of the Act.

**10.** The statutes cited by EPA as authority for these regulations were 33 U.S.C. §§ 1342, 1345, and 1361. 33 U.S.C. § 1342 pertains to the issuance of permits for the discharge of pollutants and specifies the applicable procedures. 33 U.S.C. § 1345 concerns the disposal of sewage sludge; subsection (b) of § 1345 treats with the issuance of permits for the disposal of sewage sludge and refers back to § 1342 for the procedures to be followed. 33 U.S.C. § 1361 is a "catchall" which authorizes the Administrator to prescribe regulations necessary to carry out his functions under the Act.

governs our jurisdiction is not entitled to deference. *Western Union Telegraph Co. v. FCC*, 541 F.2d 346, at 356–357 (3d Cir., 1976) (Garth, J., dissenting). But we believe that when an agency employs its special knowledge and expertise in construing significant terms of the act which it administers, particularly terms of art such as "effluent limitation", the agency's interpretation is then entitled to considerable deference. Here, EPA is not construing our powers of review as such, but has rather provided us with its interpretation of what is or what is not an effluent limitation. In such a case, while EPA's interpretation is not conclusive for jurisdictional purposes, *Columbia Broadcasting System v. United States*, 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942), we would be remiss not to give deference to its interpretation that the term "effluent limitation" does not include the Net-Gross Regulations. *See also Bethlehem Steel Corp. v. EPA*, 538 F.2d 513, 518 (2d Cir., 1976).

### B

Petitioners' next argument refers us to the definition of effluent limitation, which reads:

> The term "effluent limitation" means any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance.

33 U.S.C. § 1362(11). Their argument continues that

> Inasmuch as a net or gross regulation defines the quantity and rate of discharge, the Net-Gross Regulations meet the Act's definition of an "effluent limitation" and as such, are an exercise of the Administrator's power to establish effluent limitations under §§ 301 and 306 of the Act.

Petitioners' Brief at 13. In essence, the petitioners contend that the Net-Gross Regulations are such an integral part of the effluent limitations for the various point sources that the Net-Gross Regulations themselves must be considered as effluent limitations, and as such are reviewable. They articulate two reasons for reaching this result.

First, the petitioners claim that they can neither know the content of a particular effluent limitation nor can they comply with it unless and until they are advised as to the credit given for pollutants found in intake waters. When that credit is subtracted from the gross effluent limitation, in effect a "new" effluent limitation results. Hence, claim petitioners, this operation of the Net-Gross Regulations necessarily requires that the Regulations be regarded as effluent limitations.

Second, they point out that without the adjustments provided by the Net-Gross Regulations, effluent limitations expressed flatly in gross terms would be legally defective. *AISI I, supra,* at 1056; *American Petroleum Institute v. Train,* 540 F.2d 1023 at 1034–1035 (10th Cir., 1976); *Appalachian Power Co. v. Train,* 540 F.2d 1023, at 1034–1035 (4th Cir., 1976); *Hooker Chemicals and Plastics Corp. v. Train,* 537 F.2d 620, 633 (2d Cir., 1976). Accordingly, they argue that the Net-Gross Regulations are so much a part of any particular effluent limitation that they must be considered as effluent limitations themselves and therefore reviewable in this Court under 33 U.S.C. § 1369(b)(1)(E) as any other effluent limitation issued by the Administrator.

■ We are not persuaded by petitioners' efforts to portray the Net-Gross Regulations as effluent limitations. Rather, we agree with the EPA's analysis that the Net-Gross Regulations do no more than prescribe the policy and procedures to be followed in connection with applications for permits. 40 C.F.R. § 125.2(a)(1). Referring to the Act's definition of effluent limitation as meaning "any restriction established by a State or the Administrator on quantities,

rates and concentrations" [11] of pollutants, EPA correctly observes that the Net-Gross Regulations do not in themselves restrict quantities, rates, or concentrations.

EPA also notes that the Net-Gross Regulations are strikingly unlike the effluent limitations promulgated for the various point source categories. The Net-Gross Regulations neither prescribe specific number limitations for any pollutant, nor do they list the factors which must be considered in determining the control measures which individual point sources must employ. As EPA concludes in its discussion of this issue, *see* part III C *infra*, "In short, these regulations [Net-Gross] do not even purport to do any of those things which Congress contemplated in [33 U.S.C. §§ 1311 and 1314] that effluent limitations would do." Respondent's Brief at 14.

The petitioners' contention that they cannot know the content of an effluent limitation proves too much. It was clearly evident even before the Net-Gross Regulations were promulgated that the effluent limitations were expressed in gross terms.[12] After the promulgation of the Net-Gross Regulations, effluent limitations continued to be expressed in gross terms, and compliance with gross standards was required in all cases except those in which the applicant for a permit could demonstrate that it could not meet such limitations because of the level of pollutants in the intake water. Hence, at least since the promulgation of the effluent limitation regulations, there has been and continues to be no uncertainty as to the limitations to be achieved for

compliance. And the fact that credit for intake pollutants may be granted during permit proceedings cannot alter the basic gross limitation itself.

Addressing the second reason advanced by the petitioners for asserting that the challenged Regulations are in reality effluent limitations, we acknowledge that the Net-Gross Regulations were promulgated to resolve the problem [13] presented by the issuance of these limitations in gross terms. However, we do not believe that the purpose for the issuance of the Net-Gross Regulations (i. e., to cure purported illegality) can support the petitioners' argument for review under 33 U.S.C. § 1369(b)(1)(E).

As noted, the petitioners argue that the gross limitations established by EPA are illegal. Therefore, they contend that the Net-Gross Regulations were issued solely to remedy the constitutional or statutory defects implicit in expressing limitations in gross terms. However, say the petitioners, the Net-Gross Regulations are such an integral part of, and so intertwined with, the basic gross limitations, that the Net-Gross Regulations themselves have now become "effluent limitations." It is on this ground that they urge review.

We note, however, that the petitioners seek review in this proceeding only of the Net-Gross Regulations—i. e., those Regulations which merely operate to modify the gross limitations. The fallacy that we sense in the petitioners' argument is that without the original gross limitations before us, the modifications, if any, which may be effected by the operation of the Net-Gross

---

11. 33 U.S.C. § 1362(11).

12. *See, e. g.,* with regard to the iron and steel manufacturing point source category, EPA Development Document for Proposed Effluent Limitations Guidelines and New Source Performance Standards for the Steel Making Segment of the Iron and Steel Manufacturing Point Source Category (February 1974); Preamble to Effluent Guidelines and Standards for Iron and Steel Manufacturing Point Source Category, 39 Fed.Reg. 24115 (June 28, 1974). The Net-Gross Regulations were published in proposed form on October 18, 1974, 39 Fed.Reg. 37215 (1974). They were published in final form on July 16, 1975, 40 Fed.Reg. 29848.

13. As we have previously noted, the petitioners' argument is that limitations expressed in gross terms are statutorily or constitutionally infirm. To the extent that this issue has been discussed by various Courts of Appeals, all courts have either recognized the need for credit adjustments or have acknowledged that the Net-Gross Regulations meet that need. *Hooker Chemical and Plastics Corp. v. Train, supra; Appalachian Power Co. v. Train, supra; American Petroleum Institute v. Train, supra*; and *American Iron and Steel Institute v. EPA (AISI I), supra.*

Regulations are both incalculable and unintelligible. Hence, since the Net-Gross Regulations serve only to adjust gross effluent limitations under certain circumstances, we find it difficult, if not impossible, to understand how the Regulations can be intelligently reviewed in a proceeding in which the original gross effluent limitations for a particular point source category are neither being reviewed nor considered.

In *Hooker Chemical and Plastics Corp. v. Train, supra, Appalachian Power Co. v. Train, supra,* and *American Petroleum Institute v. Train, supra,* the promulgation of effluent limitations for three point source categories (phosphate manufacturing, steam electric power generating, and petroleum refining) were reviewed under 33 U.S.C. § 1369(b)(1)(E). The petitioners in those cases raised objections which the Net-Gross Regulations were designed to answer. As a consequence, the Net-Gross Regulations were considered, but only in conjunction with specific effluent limitations. Similarly, if the Net-Gross Regulations are reviewed in a permit context under 33 U.S.C. § 1369(b)(1)(F), they will be considered in conjunction with the effluent limitations for a specific point source category and in a specific factual setting.

By contrast, if, as we are urged by petitioners, we were to consider the Net-Gross Regulations at this stage, we would face two equally unattractive alternatives. On the one hand, we would be obliged to review the regulations in a vacuum, *i. e.,* without specific effluent limitations in issue and without the factual context and record of a permit proceeding. On the other hand, we would be required to consider the effect of these regulations upon effluent limitations for all 27 point source categories (*i. e.,* grain mills, 40 C.F.R. § 406; canned and preserved fruits and vegetables processing, 40 C.F.R. § 407; canned and preserved seafood processing, 40 C.F.R. § 408; etc.) and their impact upon all the possible factual situations which could develop. We decline

petitioners' invitation to review under such circumstances. Further, despite the ambiguity of many of the Act's provisions,[14] we do not believe, in view of the explicit and limited provisions of 33 U.S.C. § 1369(b)(1)(E) and (F), that Congress intended us to engage in deliberations of this sort in the absence of a full and comprehensive record. *See Bethlehem Steel Corp. v. EPA, supra,* at 518.

## C

Petitioners' final argument need not detain us for we find it even less persuasive than their contentions which we have already discussed. The petitioners claim that even if the Net-Gross Regulations are not regarded as effluent limitations, they nevertheless must be regarded as effluent limitation guidelines and as such are subject to review.

The distinction between "effluent limitations" and "effluent limitation guidelines" may be summarized as follows:

An "effluent limitation" represents a single number which limits the maximum amount of effluent discharge that will be permitted. *AISI I,* 526 F.2d at 1045.

On the other hand, "effluent limitation guidelines" are intended to provide precise guidance to the permit-issuing authorities in establishing a permissible level of discharge that is more stringent than the ceiling established by the effluent limitations. The guidelines are expressed in ranges below the ceiling and involve the consideration of specific factors, including, among others, cost benefit analyses of the various technologies, the age of equipment and facilities, the effect of various technologies on other aspects of the environment, and the energy requirements of various technologies. 33 U.S.C. § 1314(b).

Assuming without deciding that the petitioners are correct in their contention

14. *See American Iron and Steel Institute v. EPA,* 526 F.2d 1027, 1074 (3d Cir. 1975) (Adams, J., concurring).

that 33 U.S.C. § 1369(b)(1)(E) grants us jurisdiction to review the promulgation of effluent limitation guidelines [15] as distinct from effluent limitations,[16] *see E. I duPont de Nemours & Co. v. Train,* 528 F.2d 1136, 1142 (4th Cir. 1975), we must still determine whether the Net-Gross Regulations constitute effluent limitation guidelines.

In our discussion of effluent limitations, we adverted to the fact that the Net-Gross Regulations do not specify the factors to be considered and to be taken into account in determining control measures to be utilized by individual point sources;—a *sine qua non* for effluent limitation guidelines. See *AISI I,* 526 F.2d at 1045. No matter how liberally we read the Net-Gross Regulations, we are unable to find within them any of the characteristics essential to guidelines. It is clear to us that the Net-Gross Regulations have little if anything to do with the factors which the Act requires to be considered. Just as we have concluded that the Net-Gross Regulations do not purport to accomplish the congressional objectives in 33 U.S.C. § 1311 that effluent limitations are designed to accomplish, so we conclude that these Regulations do not purport to accomplish the congressional objectives contemplated in 33 U.S.C. § 1314.

We therefore reject the petitioners' attempt to equate the Net-Gross Regulations with effluent limitation guidelines. In rejecting this contention, we thereby hold that no review is available in this Court under 33 U.S.C. § 1369(b)(1)(E) based on that theory.

15. *See* 33 U.S.C. § 1314.

16. *See* 33 U.S.C. § 1311.

17. The brief for *amici curiae* sets forth their interest as follows:
> *Amici Curiae* are Diamond Shamrock Corporation, BASF Wyandotte Corporation, Gardinier Inc., E. I. du Pont de Nemours & Company, PPG Industries, Inc., and FMC Corporation. They are, among other things, operators of chemical manufacturing plants located throughout the United States. *Amici,* like the petitioners, discharge effluents which are subject to regulation by EPA under the terms of the Act.

## D

The *amici curiae* [17] agree with the position asserted by EPA that we do not now have jurisdiction to review the Net-Gross Regulations under 33 U.S.C. § 1369(b)(1)(E). However, *amici* maintain that jurisdiction is available at this time in the district court under provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701 and 702. The issue of district court jurisdiction is not before us, and we therefore express no view as to that contention.

## IV

Having determined that the only basis for jurisdiction in this Court stems from 33 U.S.C. § 1369(b)(1)(E) (review of an effluent limitation) and that the Net-Gross Regulations constitute neither effluent limitations nor effluent limitation guidelines, we conclude that we do not have jurisdiction to review the challenged regulations at this time. In dismissing the petition we obviously express no view as to any of the merits of the regulations or as to any issue other than issues involving our jurisdiction. *Local 1498, American Federation of Government Employees v. American Federation of Government Employees,* supra at 492; *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). Implicit in our discussion is the fact that these regulations, their validity, and their application to any permit applicant may be reviewed by this Court in subsequent proceedings brought under 33 U.S.C. § 1369(b)(1)(F) at an appropriate time and on an appropriate record.

The petitions for review will be dismissed.[18]

> *Amici* are also the plaintiffs in an action now pending in the United States District Court for the District of Columbia (*Diamond Shamrock Corp., et al. v. Train,* Civil Action No. 75–1917), in which they seek review of the same Net-Gross Adjustment Regulations. That action has issues which are similar to those posed by these consolidated cases.
> Brief for *Amici Curiae* at 3.

18. By dismissing the petitions for review we also dispose of the initial motion to dismiss the petition made by EPA and referred to this panel. We do so without separate order, as our disposition here effectively grants the relief sought in the motion.