NATURAL RESOURCES DEFENSE COUNCIL, INC., Petitioner,

v.

U. S. ENVIRONMENTAL PROTECTION AGENCY and Anne M. Gorsuch, Administrator, U. S. Environmental Protection Agency, Respondents,

Chemical Manufacturers Association, American Iron & Steel Institute, Edison Electric Institute, et al., Intervenors.

No. 80–1607.*

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1981.

Decided March 2, 1982.

* And Consolidated Cases Nos. 80–1660, 80–1723, 80–1733, 80–1740, 80–1741, 80–1809, 80–1821, 80–1837, 80–1875, 80–1881, 80–1889, 80–1909, 80–1914, 80–1915, 80–1923, 80–1924, 80–1927, 80–1928, 80–1929, 80–1931, 80–1932, 80–1934, 80–1955, 80–1966, 80–1970, 80–1975, 80–1978, 80–1984, 80–1987, 80–1989, 80–1999, 80–2002, 80–2004, 80–2007, 80–2114, 80–2279, 80–2521, 81–1569, 81–1570, 81–1571, 81–1572, 81–1573, 81–1574, 81–1575, 81–1576, 81–1577, 81–1578, 81–1579, 81–1708, 81–1709, 81–1746, 81–1747, 81–1748, 81–1749, and 81–1750.

Gene W. Lafitte, New Orleans, La., with whom J. Berry St. John, Jr., George J. Domas, and Robert E. Holden, New Orleans, La., were on brief, for petitioners American Iron and Steel Institute, et al.

Alan W. Eckert, Acting Senior Litigator, Office of Gen. Counsel, Environmental Protection Agency, Washington, D. C., with whom Anthony Liotta, Acting Asst. Atty. Gen., Donald W. Stever, Chief, Environmental Defense Section and Elizabeth Stein and David T. Buente, Jr., Attys., Environmental Defense Section, Washington, D. C., were on brief, for respondents.

Ronald J. Wilson, Washington, D. C., was on brief for petitioner Natural Resources Defense Council, Inc.

Before BAZELON, Senior Circuit Judge, and MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

These consolidated cases involve numerous challenges to Consolidated Permit Regulations (CPR's)[1] issued by the Environmental Protection Agency (EPA). Industry petitioners[2] contend that initial jurisdiction

1. 40 C.F.R. pts. 122–125 (1981).

2. Numerous industrial parties are represented by common counsel at this stage of the proceedings, and we refer to them as "industry petitioners" or simply "industry." The Natural Resources Defense Council (NRDC) is also a petitioner, but it opposes the motion to dismiss filed by industry petitioners. Certain other petitioners, such as the State of West Virginia, have taken no position on the motion to dismiss.

to review the National Pollutant Discharge Elimination System (NPDES) portion of the CPR's does not reside in this court (or any other court of appeals).[3] They have moved to dismiss all petitions for review[4] insofar as the petitions challenge NPDES-related CPR's. The parties have fully briefed and argued the motion to dismiss. We hold that section 509(b)(1)(E) of the Clean Water Act (CWA), 33 U.S.C. § 1369(b)(1)(E) (1976), vests initial authority to review the challenged regulations in the courts of appeals. We therefore deny the motion to dismiss.

## I.

Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) (1976), forbids anyone to discharge any pollutant into navigable waters except pursuant to an NPDES permit issued under CWA § 402, 33 U.S.C. § 1342 (1976 & Supp. III 1979). These permits list, for a specific discharger, the types and amounts of pollutants that may be discharged. Section 402 requires determination of the amounts listed in any given permit in compliance with, inter alia, the requirements of sections 301 and 306, 33 U.S.C. §§ 1311, 1316 (1976 & Supp. III 1979). Those two sections, in turn, require the Administrator of EPA to establish by regulation effluent limitations, based on

pollution-control technology, for sources of pollutants.[5]

EPA promulgated a set of NPDES regulations in 1979. These regulations do not set any numerical limitations on pollutant discharge. Instead, they are a complex set of procedures for issuing or denying NPDES permits. Several parties, uncertain as to the appropriate federal forum, sought review in both courts of appeals and district courts. EPA repromulgated these regulations, with slight substantive modifications, in 1980 as part of the CPR's.[6] Once again, challenges were filed in both federal courts of appeals and federal district courts. These challenges involve both NPDES and non-NPDES aspects of the CPR's. Through a complex procedural history, all court of appeals actions have been consolidated here.[7]

Industry contends that no statute vests initial jurisdiction in courts of appeals, so a challenge to NPDES-related CPR's may be instituted only under the general federal question jurisdiction of the district courts. Thus the industry petitioners have filed their motion to dismiss. EPA opposes this motion, citing CWA § 509(b)(1), 33 U.S.C. § 1369(b)(1) (1976), which provides:

Review of the Administrator's action . . . (E) in approving or promulgating

---

3. Our jurisdiction to review the non-NPDES aspects of the CPR's is conceded and, indeed, is exclusive. *See NRDC v. EPA*, 673 F.2d 392, 395 (D.C.Cir. 1980) (per curiam).

4. Industry petitioners seek dismissal of their own petitions for review as well as those filed by NRDC and others. Because of uncertainty as to the appropriate forum for initial review of the NPDES-related CPR's, both NRDC and some of the industry petitioners have sought to challenge these CPR's by filing complaints in district courts. *See NRDC v. EPA*, 673 F. 2d 392, 396 n.10 (D.C.Cir. 1980) (per curiam) (collecting cases). If we were to grant the motion to dismiss, these district courts would have to decide if they had general federal question jurisdiction to entertain the pending complaints. *See* 28 U.S.C.A. § 1331 (West Cum.Supp.1981); *see also E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 124–25, 97 S.Ct. 965, 973, 51 L.Ed.2d 204 (1977) (regulations not initially reviewable in a court of appeals under § 509(b)(1)(E) may be

reviewed "only in the District Court, if anywhere"). One district court has already asserted that it has jurisdiction to review NPDES regulations. *American Petroleum Inst. v. Costle*, No. 79–0858, slip op. at 2 (W.D.La. July 27, 1981).

5. The Administrator may also authorize any state to run an NPDES program in lieu of the federal program. Standards for the Administrator's approval of a state-run program are essentially identical to the standards that govern the federal program. CWA § 402(b), 33 U.S.C. § 1342(b) (1976 & Supp. III 1979).

6. For a fuller discussion of the CPR's, which govern five separate EPA permit programs, *see NRDC v. EPA*, 673 F.2d 392, 395–396 (D.C.Cir. 1980) (per curiam).

7. For a partial summary of this history, *see NRDC v. EPA*, 673 F.2d 392 (D.C.Cir.1980) (per curiam).

any effluent limitation or other limitation under section 1311, 1312, or 131[6] of this title ... may be had by any interested person in the Circuit Court of Appeals of the United States ....

EPA contends that this statutory section covers the NPDES-related CPR's.[8]

## II.

■ Section 509(b)(1)(E) authorizes the courts of appeals to review the promulgation of "any effluent limitation or other limitation under [CWA § 301, 302, or 306,] section 1311, 1312, or 131[6] of this title." "Effluent limitation" is defined in CWA § 502(11), 33 U.S.C. § 1362(11) (1976), as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of ... constituents which are discharged ..., including schedules of compliance." At first glance, one might read subsection E to confine this court's review to EPA's establishment of numerical limitations on pollutant discharges.[9] Two aspects of the statutory language itself, however, indicate that the provision has a wider range: (1) subsection E authorizes review of an "other limitation," not just an effluent limitation; and (2) section 502(11) defines "effluent limitation" as "*any restriction*" on the amounts of pollutants discharged, not just a numerical restriction.

The phrase "effluent limitation or other limitation" in section 509(b)(1)(E)[10] has in fact been interpreted to include more than numerical limitations. In *NRDC v. EPA*, 656 F.2d 768 (D.C.Cir.1981), we addressed a challenge to regulations governing applications for variances from the limitations imposed on municipal sewage plants. Those regulations set no numerical limitations; instead they establish "criteria and standards to be applied by EPA in acting on ... requests for modifications to the secondary treatment requirements." 40 C.F.R. § 125.56 (1981). We rejected a challenge to our jurisdiction because "[a]s a practical matter [the regulations] restrict the discharge of sewage by limiting the availability of a variance to a class of applicants which does not include all coastal municipalities." 656 F.2d at 775.

In *VEPCO v. Castle*, 566 F.2d 446 (4th Cir. 1977), the challenge was to standards regulating the construction and design of cooling water intake structures. The court agreed that these standards were not effluent limitations because they were "concerned with structures ..., not with discharges." *Id.* at 449. Nonetheless, the court held the standards reviewable as an "other limitation": "[T]he ... regulations here do refer to information that must be considered in determining the type of intake structures that individual point sources may employ, and, by that token, they are limitations." *Id.* at 450.

One court, however, has adopted the position industry urges here. In *American Iron & Steel Institute (AISI) v. EPA*, 543 F.2d 521 (3d Cir. 1976), the court held that it had

---

**8.** EPA also asserts that we have initial review authority under 33 U.S.C. § 1369(b)(1)(D) (1976) and under the doctrine of ancillary jurisdiction. Because we find § 509(b)(1)(E) a sufficient basis for our authority to review the NPDES-related CPR's, we express no opinion on EPA's other arguments.

**9.** Cf. *Montgomery Envtl. Coalition v. Castle*, 646 F.2d 568, 574 (D.C.Cir.1980) ("[E]ffluent limitations are technical specifications of the quantities of various polluting substances that a permittee may lawfully discharge.").

**10.** This phrase also appears in § 505, 33 U.S.C. § 1365 (1976), which describes what sort of violations may result in citizen suits against a polluter. Industry argues from the legislative history of § 505 that the CPR's are not an "effluent limitation or other limitation." This

may be so for purposes of § 505, but that does not prevent the CPR's from being an "effluent limitation or other limitation" for the very different purposes served by § 509(b)(1). "It is not unusual for the same word to be used with different meanings in the same act...." *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 608, 76 L.Ed. 1204 (1932); *see also* Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 Yale L.J. 333, 337 (1933) ("The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against.").

no jurisdiction to review EPA's "net/gross" regulation, which states when a permittee may receive a "credit" for pollutants in its intake water, and a revised version of which is contained in section 122.63(g) and (h) of the CPR's. The court held that the net/gross regulation was not an effluent limitation because it merely "prescribe[d] the policy and procedures to be followed in connection with applications for permits." 543 F.2d at 526.

█ We believe the approach taken in *NRDC* and *VEPCO* is sounder than that taken in *AISI*. First, of course, *NRDC* is binding precedent in this circuit, and in *NRDC* we specifically rejected the reasoning of *AISI*. *NRDC*, 656 F.2d at 776. Second, the *AISI* court, unlike the Fourth Circuit in *VEPCO*, did not consider the possibility that something that was not an "effluent limitation" could nonetheless be an "effluent limitation or other limitation." [11] Third, the *AISI* court seemed more concerned with the timing of judicial review than with identification of the forum for review; [12] thus the court may have blended considerations of ripeness for review [13] into

a determination of its statutory authority to entertain a review petition properly timed. The statute makes no explicit statement about ripeness for review; it simply sets out the actions to be reviewed in courts of appeals rather than district courts. [14] In short, the issue as it is presented here, whether jurisdiction lies initially in courts of appeals or in district courts, was not at the center of the *AISI* court's attention. Fourth, *AISI* was decided before *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977), and *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 196–97, 100 S.Ct. 1093, 1094–1095, 63 L.Ed.2d 312 (1980) (per curiam), two Supreme Court cases that influence our decision, *see infra* pp. 405–406, and might have influenced the *AISI* court to decide the other way, *see NRDC v. EPA*, 656 F.2d at 776 (D.C.Cir.1981).

*NRDC* and *VEPCO* securely support the conclusion that we have authority to review the CPR's. Some of the CPR's, *see, e.g.*, 40 C.F.R. §§ 122.54, .60, .62–.66 (1981), like the variance regulations in *NRDC*, restrict who may take advantage of certain provisions or

11. Because § 509(b)(1)(E) provides for our review of both effluent limitations and other limitations, we see no need to determine that the CPR's are one or the other. It suffices that they fit within the statutory disjunctive phrase. *Compare NRDC v. EPA*, 656 F.2d 768, 776 (D.C.Cir.1981) ("effluent limitations"), *with VEPCO v. Costle*, 566 F.2d 446, 449–50 (4th Cir. 1977) ("other limitation").

12. *See, e.g.*, 543 F.2d at 528 (declining to consider net/gross regulation "at this stage" and "in the absence of a full and comprehensive record"); *id.* at 529 ("The issue of district court jurisdiction is not before us, and we therefore express no view as to that contention.").

13. *AISI* was cited in support of our decision in *Diamond Shamrock Corp. v. Costle*, 580 F.2d 670, 674 (D.C.Cir.1978), that a net/gross regulation was not ripe for review. The parties have not yet briefed the issue of the ripeness of the CPR's, and we do not today hold that any of them are ripe for review. We hold only that this court has authority under § 509(b)(1)(E) to review any CPR's that are ripe.

14. *See, e.g., Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 196–97, 100 S.Ct. 1093, 1094–1095, 63 L.Ed.2d 312 (1980) (per curiam); *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S.

112, 127 n.18, 97 S.Ct. 965, 974, 51 L.Ed.2d 204 (1977); *VEPCO v. Costle*, 566 F.2d 446, 447 (4th Cir. 1977). The jurisdiction of the district courts in CWA cases may not be entirely settled. *See supra* note 4. It is clear, however, that Congress intended that some actions under the CWA *not* be subject to direct review in a court of appeals. Compare CWA § 509(b)(1) (six specified categories of actions under CWA) *with, e.g.*, Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1) (Supp. III 1979) (eight specific categories and "any other nationally applicable regulations promulgated, or final action taken"). Industry petitioners argue that if the CPR's are reviewable directly in a court of appeals, virtually any action under the CWA will be so reviewable, thus contravening the congressional intent. EPA contends, however—and industry does not dispute—that certain actions under the CWA are outside of § 509(b)(1). *See* EPA Brief at 27. These include, among others, rules governing hazardous substances, vessel wastes, and construction grants. We do not decide that we would lack jurisdiction in all the cases EPA lists, but we are satisfied that our decision as to the CPR's does not turn § 509(b)(1) into a comprehensive review provision that Congress did not intend it to be.

otherwise guide the setting of numerical limitations in permits. Like the regulations in *VEPCO*, the CPR's are "a limitation on point sources and permit issuers" and "a restriction on the untrammeled discretion of the industry" that existed before passage of the CWA. *VEPCO*, 566 F.2d at 450.

Industry petitioners seek to distinguish *NRDC* and *VEPCO*. The regulations in *NRDC*, they argue, "directly modif[ied]" effluent limitations, whereas "[t]he NPDES program regulations are much broader in scope ... and do not modify any of the EPA's complex technological judgments related to ... particular effluent limitations developed under section 301." Industry Brief at 31. And in both *NRDC* and *VEPCO*, they assert, the regulations were based on precise, technical information and applied only to particular types of point sources. The CPR's, everyone agrees, are far more general and rest dominantly on policy choices.

We do not agree with industry petitioners that these distinctions support initial review of the CPR's in district court rather than here. If anything, the case for first-instance judicial review in a court of appeals is stronger for broad, policy-oriented rules than for specific, technology-based rules.[15] A fair reading of the *NRDC* and *VEPCO* opinions, moreover, shows that neither decision was in any way based on the technical character of the rules or the record. Indeed, our review on the merits in *NRDC* was largely an application of legal standards to EPA's policy judgments, not its technical determinations. *See NRDC v. EPA*, 656 F.2d at 776–86 (D.C.Cir.1981).

Our decision, like those of the *NRDC* and *VEPCO* courts, follows the lead of the Supreme Court in according section 509(b)(1) a practical rather than a cramped construction. *See generally Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980) (per curiam). If we were to grant the motion to dismiss, one or more district courts might proceed to review the CPR's, yet review of a permit issued under the CPR's would take place directly in a court of appeals under section 509(b)(1)(F), 33 U.S.C. § 1369(b)(1)(F) (1976). This "would produce the truly perverse situation in which the court of appeals would review numerous individual actions issuing or denying permits ... but would have no power of direct review of the basic

---

15. National uniformity, an important goal in dealing with broad regulations, is best served by initial review in a court of appeals. *See VEPCO v. Costle*, 566 F.2d 446, 451 (4th Cir. 1977). All petitions may be consolidated in one court, as these actions have been, under 28 U.S.C. § 2112(a) (1976). *See generally NRDC v. EPA*, 673 F.2d 392 (D.C.Cir. 1980) (per curiam). There is no analogous transfer provision for district courts. If we were to grant the motion to dismiss, there would be a real possibility, *see supra* note 4, that several different district courts would proceed to review the NPDES-related CPR's, with the attendant risk of inconsistent decisions initially and on appeal. *But cf. Celanese Corp. v. Federal Energy Admin.*, 410 F.Supp. 571, 576 (D.D.C.1976) (transferring case under 28 U.S.C. § 1404(a) (1976) by analogy to § 2112(a)).

Furthermore, the great advantage the district courts have over the courts of appeals—their ability to use extensive factfinding mechanisms—is not relevant here. There is not even an arguable need to engage in technical factfinding when judicial review is concentrated on an agency record and policy determinations. The argument that the district courts are more competent than courts of appeals to review the CPR's proves too much; as counsel conceded at oral argument, the policies alleged to support district court review are no stronger with respect to the CPR's than they are with respect to other actions immediately reviewable in the courts of appeals under environmental statutes, including the CWA itself.

Finally, industry petitioners assert a basis in the statutory language for their argument that only technical regulations are reviewable directly in courts of appeals. Section 509(b)(1)(E) designates for review only the promulgation of a limitation *under § 301, 302, or 306* of the CWA. The NPDES-related CPR's were not developed by parsing the technical criteria of these sections, but we do not believe this prevents them from having been developed "under" these sections within the meaning of the jurisdictional statute. Congress would have had no reason, as we noted above, to prefer that technical rules be reviewed here and policy-based rules in district court. EPA cited § 301 as a statutory basis for the CPR's, and the CPR's set out procedures for obtaining permits that comply with § 301. It is thus fair to say that the CPR's were promulgated under § 301.

regulations governing those individual actions." *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 136, 97 S.Ct. 965, 979, 51 L.Ed.2d 204 (1977). *Crown Simpson* and *du Pont* do not unequivocally dictate our result,[16] but their reasoning strongly supports a holding that we have jurisdiction.

## III.

Industry petitioners argue that "due process" concerns nonetheless require a narrow interpretation of section 509(b)(1) review authority. Section 509(b)(1) contains a ninety-day "statute of limitations" for challenging any action of the Administrator that falls within its terms. Complementing this provision, section 509(b)(2), 33 U.S.C. § 1369(b)(2) (1976), provides that "[a]ction of the Administrator with respect to which review could have been obtained under [section 509(b)(1)] shall not be subject to judicial review in any civil and criminal proceeding for enforcement." Under these two provisions, one who wishes to challenge an action of the Administrator must, if the action is held to be within the categories of section 509(b)(1), do so within ninety days or lose forever the right to do so, even though that action might eventually result in the imposition of severe civil or criminal penalties.

■ Industry argues that this preclusive, "now or never" review aspect of the CWA mandates a narrow construction of section 509(b)(1): The more broadly the section is construed, the more likely it is that someone will have regulations enforced against him

yet be precluded from challenging the validity of those regulations because of a failure to seek immediate review under section 509(b)(1). This argument finds substantial support in decisions of the Supreme Court and this court. In *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978), the Court noted that the presence of an identical preclusive review provision in the Clean Air Act was a factor in determining that a particular regulation was not an "emission standard" that was therefore unchallengeable in an enforcement proceeding. And in *Chrysler Corp. v. EPA*, 600 F.2d 904 (D.C.Cir.1979), this court construed a jurisdictional provision of the Noise Control Act to exclude certain actions of the Administrator, in part because of an identical preclusive review statute. Citing *Adamo*, the court declared that "[t]he nagging presence of a substantial due process question indicates, then, at the very least, the propriety of a narrow interpretation of" the jurisdictional statute. *Id.* at 913.[17]

This review-preclusion consideration lacks in the present case the force it had in *Adamo* and *Chrysler*. There is a critical difference between the statutory and regulatory schemes involved in those cases and the one here. The CPR's are not self-executing. As noted above, the CWA operates by prohibiting all pollutant discharges except those *allowed by a permit*. Each individual subject to the CPR's will of necessity have participated in a permit proceeding before being punished for violating the conditions specified in his permit. A polluter charged with violating those conditions will

16. *Crown Simpson* was an interpretation of § 509(b)(1)(F); *du Pont* involved numerical limitations.

17. In *Adamo*, the Court did not suggest that constitutional concerns underlay its decision to construe "emission standard" narrowly. Justice Powell, however, "join[ed] the Court's opinion with the understanding that it implies no view as to the constitutional validity of the preclusion provision of § 307(b) [of the Clean Air Act, 42 U.S.C. § 7607(b) (Supp. III 1979)] in the context of a criminal prosecution." 434 U.S. at 291, 98 S.Ct. at 575 (concurring opinion). This court, in *Chrysler*, based its narrow

statutory interpretation both on "policy considerations," 600 F.2d at 912, arising from the preclusive provision, and on doubts as to "the constitutional validity of the preclusive review provision," *id.* at 913. In *Harrison v. PPG Indus.*, 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), Justice Powell noted the *Chrysler* decision and declared that "constitutional difficulties may well counsel a narrow construction of § 307(b)(1)," the Clean Air Act jurisdictional section analogous to CWA § 509(b)(1). 446 U.S. at 594, 100 S.Ct. at 1898 (concurring opinion).

certainly be on notice of the duty he is alleged to have breached. As EPA puts it, "The possibility of an EPA 'sneak attack,' resulting in criminal sanctions with no notice to the victim other than the filing of a complaint, appears to have been controlling in *Adamo*. That factor is absent here." EPA Reply Brief at 16–17. *See generally Adamo*, 434 U.S. at 283 & n.2, 98 S.Ct. at 571.

Industry counsel pointed out at oral argument, however, that another class of persons might be subject to sanctions as a result of the CPR's: those who were not previously required to obtain a permit but, because of some changed definitions in the CPR's, are now considered polluters subject to the CWA. For example, a member of this class might pollute an impounded stream without a permit believing that he was not polluting "waters of the United States." He might be unaware that one of the CPR's, 40 C.F.R. § 122.3 (1981), for the first time defines "waters of the United States" to include such streams. Thus he could be prosecuted although at the time of his conduct he did not know he was violating the law.

We do not believe our interpretation of the jurisdictional provisions of the CWA should turn on the situation of a class such as this. There are certainly few persons in this position, and perhaps there are none. Furthermore, it is hardly clear that such polluters would be without recourse. If they were genuinely caught by surprise when prosecuted for pollution without a permit, they might raise the question whether the preclusive review provision, section 509(b)(2), was unconstitutional as applied to their special situation.[18] In a Clean Air Act case, the Supreme Court was urged to put a narrow construction on section 307(b)(1), 42 U.S.C. § 7607(b)(1) (Supp. III 1979), which governed court of appeals jurisdiction. It was urged that a broad construction would be unconstitutional because subsequent review of anything within section 307(b)(1) was barred by section 307(b)(2), 42 U.S.C. § 7607(b)(2) (Supp. III 1979). The Court rejected this argument: "The short answer . . . is that the validity of § 307(b)(2) is not at issue here. The constitutional question raised by the respondents must, therefore, await another day." *Harrison v. PPG Industries*, 446 U.S. 578, 592–93 n.9, 100 S.Ct. 1889, 1897–1898, 64 L.Ed.2d 525 (1980). Identical reasoning applies in this case.[19]

## IV.

We hold that the CPR's are an "effluent limitation or other limitation" under section 509(b)(1)(E). We reject industry petitioners' claim that "due process" requires a narrower construction; the statutory and regulatory framework of this case undercuts industry's arguments, and a constitutional attack on section 509(b)(2) must await a later day. We have authority to review any CPR's that are ripe for review. The motion to dismiss is denied.

*So ordered.*

---

18. Similarly, one who was unaware of the CPR's before seeking a permit, and who wished to attack them at the permit stage, might argue the unconstitutionality of § 509(b)(2) as applied.

19. We also note that the Supreme Court has twice interpreted § 509(b)(1), and on neither occasion has the Court suggested that due process concerns required a narrow construction. *See Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980) (per curiam); *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977).