TEXAS MUNICIPAL POWER
AGENCY, Petitioner,

v.

ADMINISTRATOR OF the UNITED
STATES OF AMERICA ENVIRON-
MENTAL PROTECTION AGENCY and
the United States Environmental Pro-
tection Agency, Respondents.

No. 85–4513.

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1986.

Paul Gerard Gosselink, Lloyd, Gosselink,
Ryan & Fowler, Leslie Elizabeth Barras,
Austin, Tex., for petitioner.

Stephen L. Samuels, Lee Thomas, Adm'r,
E.P.A., Erik D. Olson, Atty., Washington,
D.C., for respondents.

Before GARWOOD and HILL, Circuit
Judges, and WILL,* Senior District Judge.

GARWOOD, Circuit Judge:

Petitioner challenges the conditions of a
National Pollution Discharge Elimination
System (NPDES) permit and the Environ-
mental Protection Agency's (EPA) authori-
ty to impose those conditions on an outfall
at petitioner's steam generating plant. We
determine that this Court lacks jurisdiction
over the application for review because pe-
titioner did not file its application for re-
view within the statutorily prescribed nine-
ty-day period, and accordingly we dismiss
the application.

**Facts**

Petitioner Texas Municipal Power Agen-
cy (TMPA) provides electricity to cities in
Texas from its lignite-fired steam generat-
ing plant adjacent to the Gibbons Creek
Reservoir in Grimes County, Texas. In
accordance with the Clean Water Act,
TMPA applied for and received NPDES
permits authorizing discharges from seven
wastewater outfalls at its plant. One of
these outfalls, 301, measures the flow of
treated wastewater from the 20,000–gallon-
a-day wastewater treatment facility con-
structed to serve the domestic sewage
needs of the three hundred employees at
the plant. Outfall 301 measures the flow

* District Judge of the Northern District of Illi-   nois, sitting by designation.

of the treated wastewater from the wastewater treatment facility into the first of three interconnected ash ponds. These ash ponds also receive bottom ash-laden waters from the generating plant. The ash ponds serve primarily as sedementation basins for the bottom ash-laden waters and, according to TMPA, also serve as the last phase of the treatment process for the sanitary wastewater effluent discharged from the treatment facility. Two pollutants are regulated by the EPA through Outfall 301. These are biological oxygen demand and total suspended solids. Once circulated through the ash ponds, some of the water is recirculated through the plant to capture more bottom ash and some is discharged into the Gibbons Creek Reservoir through Outfalls 101 and 501. Outfalls 101 and 501 are regulated by the same NPDES permit.

EPA issued TMPA's original NPDES permit on December 13, 1978, effective January 16, 1979. The original permit expired January 15, 1984. EPA reissued the permit with certain modifications on March 9, 1984, effective April 4, 1984, and expiring April 9, 1989. At the time TMPA requested renewal of the NPDES permit, it made no request for any changes regarding Outfall 301. On October 27, 1984, TMPA requested a modification of the existing NPDES permit seeking to increase the allowable discharge at Outfall 401; however, TMPA did not mention Outfall 301. On November 15, 1984, EPA filed an enforcement action against TMPA in the Southern District of Texas seeking civil penalties and injunctive relief for alleged violations of effluent limitations at Outfall 301 occurring between November 1982 and July 1984. After the instigation of this enforcement action, TMPA replaced the old 6,000–gallon wastewater treatment facility with the current 20,000–gallon facility. On May 2, 1985, effective May 3, 1985, EPA agreed to the modification at Outfall 401 and of its own accord modified the conditions at Out-

fall 201. The EPA did not in any way modify TMPA's obligation at Outfall 301. On July 30, 1985, TMPA filed this application for review of the EPA Administrator's actions in setting the permit requirements for Outfall 301.[1]

### Discussion

■ Section 509(b)(1) of the Clean Water Act states:

"Review of the Administrator's action ... in issuing or denying any permit under section 1342 of this title [NPDES], may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. *Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial,* or after such date only if such application is based solely on grounds which arose after such ninetieth day." 33 U.S.C. § 1369(b)(1) (emphasis added).

Statutory time limits on petitions for review of agency actions are jurisdictional in nature such that if the challenge is brought after the statutory time limit, we are powerless to review the agency's action. *Natural Resources Defense Council, Inc. (NRDC) v. EPA,* 673 F.2d 400, 406 (D.C. Cir.), *cert. denied,* 459 U.S. 879, 103 S.Ct. 175, 79 L.Ed.2d 143 (1982); *Homestake Mining Co. v. EPA,* 584 F.2d 862 (8th Cir.1978); *see also Texas v. United States Interstate Commerce Commission,* 749 F.2d 1144, 1146 (5th Cir.) (enforcing similar sixty-day review provision for Interstate Commerce Commission rulings), *cert. denied,* —— U.S. ——, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985); *Eagle-Picher Industries, Inc. v. EPA,* 759 F.2d 905, 911 (D.C. Cir.1985) (construing ninety-day review provision of the Comprehensive Environmental Response, Compensation, and Liability

---

1. TMPA may be prohibited from challenging the EPA's jurisdiction to regulate Outfall 301 in the enforcement proceeding by section 509(b)(2) of the Clean Water Act, since section 509(b)(2) prohibits judicial review in any civil or criminal enforcement proceeding of any EPA action which could have been reviewed by the court of appeals as provided for in section 509(b)(1). However, we do not decide that question, as our jurisdiction has not been timely invoked.

Act);[2] *City of Seabrook, Texas v. EPA,* 659 F.2d 1349, 1370 (5th Cir.1981) (strictly enforcing similar sixty-day judicial review provision in Clean Air Act), *cert. denied,* 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982). These time limitations impart finality to the administrative process, thus conserving administrative resources. *Eagle-Picher, supra,* at 911; *NRDC v. Nuclear Regulatory Commission,* 666 F.2d 595, 602 (D.C.Cir.1981). The requirements show a congressional decision to impose statutory finality on agency actions that we, as a court, may not second-guess. *Eagle-Picher, supra,* at 911; *City of Rochester v. Bond,* 603 F.2d 927, 935 (D.C.Cir. 1979). The statutory time limitations have been strictly enforced. For example, in *Homestake Mining, supra,* the court dismissed an application for review of an NPDES permit modification for lack of jurisdiction when the court clerk received the application for review four days after the statutory limitation period had expired. In *NRDC v. EPA, supra,* at 406, the court dismissed an untimely application for review under section 509(b)(2) of the Clean Water Act, stating that anyone who wished to challenge such an action must do so within the ninety-day period prescribed by section 509(b)(1) or "lose forever the right to do so, even though that action might eventually result in the imposition of severe civil or criminal penalties."

TMPA received its permit regulating Outfall 301 on April 10, 1984, and TMPA filed its application for review July 30, 1985, over a year after the ninety-day statutory period for filing an application for review. Therefore, we lack jurisdiction to review the claim. TMPA argues that the application was timely filed because the ninety-day limitation period should run not from the reissuance of the permit in 1984, but from the issuance of the modified permit on May 3, 1985. If we accept TMPA's argument that the date should run from May 3, 1985, then the application for review is timely filed. We are not persuaded, however, by TMPA's argument that the time period should run from the issuance of the modified permit on May 3, 1985.

TMPA's requested modification covered only Outfall 401. EPA, on its own initiative, also modified the permitting requirements for Outfall 201. Neither TMPA nor EPA requested or took any action regarding Outfall 301 in those proceedings. EPA's regulations clearly establish that a modification of a permit reopens the proceeding only with respect to the specific provisions modified. The regulations state: "In a permit modification under this section, only those conditions to be modified shall be reopened when a new draft permit is prepared. All other aspects of the existing permit shall remain in effect for the duration of the unmodified permit." 40 C.F.R. § 124.5(c)(2). The Ninth Circuit, in determining whether the extension of a permit was the same as the issuance of one for purposes of judicial review, stated that the modification of an existing permit affects only the meaning and the scope of those provisions modified and, unlike an extension, does not affect all provisions of the permit by prolonging their lives. *Pacific Legal Foundation v. Costle,* 586 F.2d 650, 655 (9th Cir.1978), *rev'd on other grounds,* 445 U.S. 198, 100 S.Ct. 1095, 63 L.Ed.2d 329 (1980). In this case, there was no revocation or reissuance of the TMPA permit and the modified permit issued in 1985 did not affect the conditions for Outfall 301 (nor was there any request in those proceedings that it do so). There is nothing to indicate that any part of the permitting conditions for Outfall 301 should be considered as part of the modified permit.

**2.** The District of Columbia Circuit Court recognizes a limited number of exceptional circumstances in which it may consider a challenge to the Agency's actions that is brought after the statutory time limit. These exceptions are when the petitioner lacked a meaningful opportunity to challenge the Agency's action during the review period due to inadequate warning that the petitioner would be affected by the action, confusion in the law as to the proper forum for review, and lack of ripeness during the review period. *Eagle-Picher, Inc.,* 759 F.2d at 911–12. We need not address whether we would adopt these exceptions because TMPA's situation does not fall within any of them.

All the conditions applicable to Outfall 301 were contained in the NPDES permit issued March 9, 1984. Therefore, under section 509(b)(1) of the Clean Water Act, TMPA was required to file any application for review not later than June 5, 1984. TMPA did not file its application for review until more than a year after the statutory limitation period. Accordingly, this Court must dismiss the application for review because we lack jurisdiction. Because we must dismiss for lack of jurisdiction, we do not address TMPA's substantive challenges to the permit nor EPA's claim that TMPA has not exhausted its administrative remedies.

### Conclusion

TMPA's attempt to bring Outfall 301 within the scope of the 1985 modified permit is contrary to EPA regulations and must fail. Since TMPA did not file its application for review within the ninety-day time period prescribed by section 509(b)(1) of the Clean Water Act, we lack jurisdiction over the application for review and accordingly dismiss.

DISMISSED.