**AMERICAN PAPER INSTITUTE, INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 89–1751.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 3, 1989.

Decided Aug. 18, 1989.

Russell S. Frye, Chris Montgomery, Chadbourne & Parke, Washington, D.C., for American Paper Institute, Inc., Petitioner.

William K. Reilly, E.P.A., Washington, D.C., Richard J. Carlson, E.P.A. Office of the Regional Counsel, Chicago, Ill., Thomas H. Pacheco, David M. Thompson, Dept. of Justice, Land & Natural Resources, Washington, D.C., for E.P.A., respondent.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dioxin, the short name for a group of chlorinated dibenzodioxins and dibenzofurans, may be toxic even when present in amounts too small to detect. Complicating matters, scientists cannot predict which industrial processes will have dioxin among the byproducts. Factories in full compliance with environmental rules suddenly may be revealed to be discharging dioxin. Paper and pulp production using a process that bleaches the wood with chlorine is an example. The process recently has been found to produce minute amounts of dioxin.

Paper mills, like other sources of water pollution, need permits to operate. Thirty-nine states issue these permits under standards largely established by the Environmental Protection Agency, 33 U.S.C. § 1313(c); the EPA itself issues permits in the other states. The Clean Water Act requires states to notify the EPA of permits they propose to issue; the EPA may veto the proposal. States may modify them to secure the EPA's assent, or the EPA may take over the process. See 33 U.S.C. § 1342. Needing to secure the EPA's assent one way or another, states and applicants for permits naturally pay substantial attention to the EPA's policy statements and other documents published for "guidance", even though these lack legally binding effect.

The EPA has published a policy statement concerning the tolerances for dioxin in new and renewed permits of paper mills using chlorine bleaching. Region V of the EPA, which covers several midwestern states, supplemented this with a policy statement of its own—captioned "Approach to Regulation of Dioxin Discharges from Pulp and Paper Mills that Bleach with Chlorine"—that is more onerous in some respects, paper mills believe. The American Paper Institute seeks judicial review of the policy statement drafted by Region V in December 1988, sent to the states in January 1989, and recirculated with the national statement in April 1989. The EPA asks us to dismiss the petition for want of jurisdiction.

Because the Clean Water Act bars review in enforcement proceedings of actions that could have been reviewed earlier, 33 U.S.C. § 1369(b)(2), careful lawyers must apply for judicial review of anything remotely resembling a reviewable order. Region V's policy statement resembles a regulation, but only remotely. It is not reviewable, for at least two reasons.

First, § 509(b)(1)(E) of the Act, 33 U.S.C. § 1369(b)(1)(E), which the Institute invokes as the source of our authority, does not cover policy statements. It authorizes review of "the Administrator's action ... in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title". Region V's policy does not fit this statute.

(a) Region V is not the "Administrator". Its policy statement is a go-it-alone document separate from the Administrator's advice to the states. Unless the Administrator later applies the policy statement to a plant, nothing will come of it.

(b) Neither Region V nor the Administrator "promulgated" anything. Promulgation means issuing a document with legal effect. Region V's policy statement has none: it does not appear in the Federal Register and will not be codified in the

Code of Federal Regulations. See *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C.Cir.1986) (Scalia, J.) (failure to publish in the Federal Register is the best evidence that a document lacks legal effect). Region V told the states how it thought it might react to particular proposals, but telegraphing your punches is not the same as delivering them.

(c) An "Approach to Regulation" is not an "effluent limitation or other limitation under" one of the three listed sections. Each of these sections allows the EPA to establish rules that render discharges "unlawful". Policy statements without independent legal effect do not do so. In *American Paper Institute, Inc. v. United States EPA*, No. 88–1395, (7th Cir. Aug. 1, 1989), slip op. 23–28, we held that a policy statement published in the Federal Register and appearing in the Code of Federal Regulations was not within the scope of § 509(b)(1)(E) because although it was designed to "provide a general outline of the EPA's policy", slip op. 26 it did not establish rules with independent force. Although the EPA may establish an "other limitation" for purposes of § 509(b)(1)(E) without numerical quotas on discharges, see *NRDC v. United States EPA*, 673 F.2d 400, 403–06 (D.C. Cir.1982) (procedures for issuing and denying permits are "other limitation[s]"), it does not follow that every document concerning pollution is an "other limitation". It must have bite—it must at least control the states or the permit holders, rather than serve as advice about how the EPA will look at things when the time comes.

The review-preclusion proviso in § 509(b)(2) dissuades us from reading § 509(b)(1) broadly; the more we pull within § 509(b)(1), the more arguments will be knocked out by inadvertence later on—and the more reason firms will have to petition for review of everything in sight. If we were to take jurisdiction of a case such as this, we might need to hear challenges to every intra-office memo in which the associate deputy director for 4″ pipes told the deputy associate director for nozzles what he planned to do about 4″ nozzles, if some should be built. Cf. *Central Hudson Gas & Electric Corp. v. United States EPA*, 587 F.2d 549, 556–57 (2d Cir.1978) (reading § 509(b)(1) restrictively), approved in *American Paper Institute*, slip op. 8–9.

Second, to the extent that the Institute relies on a "presumption of reviewability" independent of § 509(b)(1), it is enough to say that this case is about the timing rather than the existence of review. If Region V's "Approach to Regulation" ever leads to the denial or modification of a permit, the paper mill will be entitled to judicial review. Now is too soon. Region V does not demand that any firm change its conduct now; Region V has no authority to do so. Every permit holder may proceed under the authority of its existing permit, without regard to Region V's suggestions. If states heed the suggestions to the detriment of paper mills, review is possible in state court. If states propose a course of action inconsistent with Region V's wishes, the Administrator may overrule Region V. If the Administrator adopts Region V's position and a permit is turned down, modified, or rescinded, review will be available in state or federal court. That review, on a full record, will disclose the EPA's final position, as applied to the plant in question.

Until the EPA puts polluters under the gun, compelling them to do something they would rather not, the "final" agency action lies ahead. See *Dow Chemical Co. v. EPA*, 832 F.2d 319, 324 (5th Cir.1987) (similar policy statement under the Clean Air Act held not final agency action). Cf. *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (issuance of administrative complaint is not final agency action); *Chicago Board of Trade v. SEC*, 883 F.2d 525, 530 (7th Cir.1989) (decision of the agency's staff not to recommend action is not final). Other cases declining to review opinion letters and policy statements include *Biotics Research Corp. v. Heckler*, 710 F.2d 1375 (9th Cir.1983); *Baltimore Gas & Electric Co. v. ICC*, 672 F.2d 146 (D.C.Cir.1982); *Air California v. United States Department of Transportation*, 654 F.2d 616 (9th Cir.1981); *Parke, Davis & Co. v. Califano*, 564 F.2d 1200 (6th Cir.

**290**

1977). To the extent *Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979), holds that a court may review an agency's statements about how it sees the law even though these have no immediate consequences for private conduct, we respectfully disagree. *FTC v. Standard Oil Co.* takes a different view; prior appellate opinions cannot be considered authoritative. Nothing but grief could come of trying to review an "enforcement policy" without knowing how (or even whether) it would affect any plant.

The petition is dismissed for want of jurisdiction.