**ROLL COATER, INC., Petitioner,**

v.

**William K. REILLY, Administrator, United States Environmental Protection Agency, Respondent.**

**Nos. 90–2152, 90–3856.**

United States Court of Appeals, Seventh Circuit.

Submitted March 29, 1991.

Decided May 16, 1991.

Renee R. McDermott, Anthony C. Sullivan, Barnes & Thornburg, Indianapolis, Ind., for petitioner.

Lee M. Thomas, E.P.A., Washington, D.C., Noel W. Kohl, Valdas V. Adamkus, Robert B. Schaefer, Kenneth B. Graves, Region 5, Office of the Regional Counsel, Chicago, Ill., Martin F. McDermott, Dept. of Justice, Environmental Defense Section, David L. Dain, Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., David P. Nelsen, Charles Bardonner, Indiana Dept. of Environmental Management, Indianapolis, Ind., for respondent.

Before EASTERBROOK, RIPPLE and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Amendments to the Clean Water Act in 1987 require states to identify stretches of water that are out of compliance with targets for levels of toxic substances. Section 304($l$) of the Clean Water Act, 33 U.S.C. § 1314($l$). States must place the waters on the "B list" and the sources responsible for the problem on the "C list". (These appellations come from § 304($l$)(1)(B) and (C).) States must devise for each source "individual control strategies" (ICSs) calculated to bring about compliance with the targets within three years of the strategies' adoption. If the EPA rejects the states' lists or strategies, it must establish its own. See generally *Westvaco Corp. v. EPA*, 899 F.2d 1383 (4th Cir.1990).

Indiana concluded that a segment of Travis Ditch in Kingsbury exceeds the target levels of some toxic substances, and that Roll Coater, Inc., is responsible for part of the excess. It submitted to the EPA a B list including Travis Ditch, a C list including Roll Coater, and an ICS for Roll Coater. Under the EPA's regulations, an ICS takes the form of a draft modified permit for discharges. 40 C.F.R. § 123.46(c). The ICS is not the same as a new permit, however. After the EPA approves the ICS, the state must modify the permit using its own processes.

Roll Coater, which paints and coats steel coils, protested Indiana's inclusion of Travis Ditch on the B list. It contended that the levels of the toxic substances (copper, lead, and zinc) had not been measured correctly. If Roll Coater is right, then Indiana need not modify its permit—and Roll Coater need not make costly alterations to reduce its emissions of these metals. In January 1990 the Chief of the EPA's Regional Water Quality Branch sent Roll Coater a letter disagreeing with its position. Roll Coater filed a petition, No. 90–2152, to review this letter. This petition is premature. *American Paper Institute, Inc. v. EPA*, 882 F.2d 287 (7th Cir.1989). The letter is not the EPA's final action, which came in September, when it approved Indiana's inclusion of Travis Ditch on the B list and Roll Coater on the C list. It also

approved the ICS Indiana had devised for Roll Coater. 55 Fed.Reg. 36309, 36313 (Sept. 5, 1990). The EPA asks us to dismiss Roll Coater's petition, No. 90–3856, to review its final decisions.

■ At the same time as it enacted § 304(*l*), Congress added a subsection to the Clean Water Act's judicial-review provision. The new § 509(b)(1)(G), 33 U.S.C. § 1369(b)(1)(G), provides that review of the Administrator's action "in promulgating any individual control strategy under § 304(*l*) may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action". Roll Coater contends that the EPA's approval of the ICS Indiana submitted is an order "promulgating" an ICS, reviewable under § 509(b)(1)(G). It asks us to disapprove *P.H. Glatfelter Co. v. EPA*, 921 F.2d 516 (4th Cir.1990), whose distinction between orders "approving" a state's submissions and orders "promulgating" plans of the EPA's own devising would require us to dismiss its petition. The EPA submits that an order approving a state's proposed ICS is not reviewable. Last year it expressed a distinctly contrary view, 55 Fed.Reg. 26201–02 (June 27, 1990), which it has abandoned in light of *Glatfelter.*

Section 304(*l*) gives the EPA four options: (1) the EPA may approve the state's lists; (2) the EPA may disapprove the state's lists (or any portion of them) and adopt its own lists under § 304(*l*)(3); (3) the EPA may approve the state's ICSs; (4) the EPA may disapprove one or more of the state's ICSs and issue its own, again under § 304(*l*)(3). It must do at least two of these following a state's submission. It may, for example, (1) approve the state's lists and (3) approve the state's ICSs, as in our case. The EPA also could (2) disapprove the state's lists and write its own, following which it would (4) adopt its own ICSs. Other combinations are possible. In *Glatfelter* the EPA (2) disapproved the state's lists, but (3) approved the state's ICSs. The fourth circuit held that neither

action is reviewable under § 509(b)(1)(G). The EPA contends that *only* action (4) is reviewable. Roll Coater contends that all four actions may be reviewed under § 509(b)(1)(G).

Section 304(*l*) requires states to devise both lists and strategies. Section 509(b)(1)(G) allows review of the EPA's orders promulgating "individual control strategies". This means that § 509(b)(1)(G) does not authorize review of action (1) or (2), approving a state's lists or creating its own. Whether § 509(b)(1)(G) authorizes review of an order approving ICSs of the state's creation depends on what it means for the EPA to "promulgate" an ICS. Roll Coater believes that to approve an ICS and publish that action in the Federal Register is to "promulgate" that ICS. *American Paper Institute*, 882 F.2d at 288–89, treats promulgation as issuing a document with legal effect. Cf. *United Technologies Corp. v. OSHA*, 836 F.2d 52, 54 (2d Cir. 1987). The EPA contends that the statute distinguishes between approving a state's ICS under § 304(*l*)(2) and promulgating (that is, devising and issuing) a federal ICS under § 304(*l*)(3).

"Promulgate" could mean either thing. Other subsections of § 509(b)(1) clarify its meaning. Subsection (E) authorizes review of a decision "approving or promulgating any effluent limitation" under certain sections, the very distinction the EPA asks us to draw under subsection (G). Other subsections reinforce this reading. Subsections (B) and (D) create jurisdiction to review "any determination pursuant to" a named statute. Three more subsections— (A) and (C), in addition to (G)—limit review to the EPA's action in "promulgating" something. Subsection (A) refers to a "standard of performance" under § 306, 33 U.S.C. § 1316, and subsection (C) to an "effluent standard, prohibition, or pretreatment standard" under § 307, 33 U.S.C. § 1317. All of the items in (A) and (C) are things the Administrator does on his own. Subsections (B) and (D) treat "determinations" as something different from promulgation, implying that the EPA does not "promulgate" everything it issues or approves. Words sometimes change meaning

in mid-section—for statutes are cobbled together by different persons at different times, and the United States lacks an institution such as France's Conseil d'État that reviews statutes for consistency and technical correctness. Roll Coater offers no reason to suppose that words change their meanings within § 509(b)(1), however, and we therefore conclude that *Glatfelter* is right in separating the EPA's "approval" of a state's proposed ICSs from the EPA's "promulgation" of its own under § 304(*l*)(3).

*Glatfelter* holds that firms adversely affected by the EPA's approval of a state's plan must wait until the state amends the firm's permit, then contest that amendment in state court. Roll Coater submits that this recreates the bifurcation of jurisdiction condemned in *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980). To be sure, it is unsettling to contemplate the prospect that neither the state nor an affected firm can have review in federal court when the EPA disapproves the state's lists and forces the state to come up with new ICSs, which it then approves. That situation—the one in *Glatfelter*—could leave the firm asking the state court to set aside an order that the state's agency did not want to issue in the first place. No one would defend the EPA's decision, unless the EPA intervened. That is, however, a logical consequence of § 509(b)(1)(G), an outcome we thought tolerable in *American Paper Institute, Inc. v. EPA*, 890 F.2d 869 (7th Cir.1989), when holding that the only review of another kind of decision under the Clean Water Act lay in state court. That opinion remarks that the 1987 amendments "fundamentally altered the underpinnings of the *Crown Simpson* decision." 890 F.2d at 874. Roll Coater offers us no reason to reconsider our conclusion.

■ Roll Coater has one final request: that we transfer the case to the district court under 28 U.S.C. § 1631. If the EPA's decision is not reviewable in this court under § 509(b)(1)(G), then it must be reviewable in the district court under the Administrative Procedure Act, Roll Coater submits. We rejected a similar contention in *American Paper Institute*, 890 F.2d at

874–75 & n. 8. The 1987 amendments divide review between the courts of appeals and state courts, not between the courts of appeals and the district courts. Indiana has not yet amended Roll Coater's permit to discharge pollutants. The outer limit for completion of any reduction in discharges depends on the date of the EPA's approval of the ICS. Section 304(*l*)(1)(D) allows three years from federal approval: September 1993. But until Indiana amends its permit, Roll Coater does not have to do anything. Once Indiana amends the permit, Roll Coater may obtain review in state court—and it may urge as a reason to set aside the amendment its belief that Indiana and the EPA erred in putting Travis Ditch on the B list.

Review of the EPA's approval in district court, and of the state's submissions and modifications in state court, would bifurcate proceedings in a way Congress wanted to avoid. It would also induce firms to pester the district courts, for under § 509(b)(2) any firm that foregoes available review is forever barred. Both *American Paper Institute* opinions express great reluctance to multiply the occasions for review, especially when careful counsel must respond to the combination of uncertain opportunities for review and § 509(b)(2) by filing buckshot petitions. 882 F.2d at 289; 890 F.2d at 873–75. Environmental laws produce complexities aplenty; we need not read them to produce jurisdictional snarls accompanied by parallel litigation in state and federal courts. Section 304(*l*) is designed to expedite cleanups, not to breed lawsuits. "Piecemeal review of EPA decisions under section 304(*l*) before final permit issuance would thwart this ambitious goal and should not be allowed." *Glatfelter*, 921 F.2d at 518. Until the state amends Roll Coater's permit to incorporate the terms of the ICS, there is no review anywhere. Once Indiana does this, a state court may review the action, including all of the antecedent decisions about the contents of the B and C lists.

DISMISSED FOR WANT OF JURISDICTION.