SOUTH HOLLAND METAL FINISHING
COMPANY, Petitioner,

v.

Carol BROWNER, Administrator, United
States Environmental Protection
Agency, Respondent.

No. 95–1657.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1996.

Decided Oct. 3, 1996.

William A. Speary, Jr. (argued), Karen L. Johnson, Daniel K. Reising, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, for Petitioner.

Carol M. Browner, Environmental Protection Agency, Washington, DC, Valdas V. Adamkus, Joseph Williams, Environmental Protection Agency, Chicago, IL, Sylvia Quast (argued), Department of Justice, Environmental Defense Section, Washington, DC, for Respondent.

Before COFFEY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

South Holland Metal Finishing Company ("South Holland") operated an electroplating operation in South Holland, Illinois. South Holland's electroplating operation generated polluted wastewater which they treated before discharging into the sewer system. South Holland, upon losing its lease in 1986, moved its operation to a nearby building. The Metropolitan Water Reclamation District of Greater Chicago ("Water District")[1]

---

**1.** As explained by South Holland, the Water District

was created and currently exists pursuant to the Illinois Metropolitan Water Reclamation District Act. 70 ILCS 2605/1 *et seq.* The Act provides that the District shall be incorporated within the contiguous territory of Cook County, Illinois to operate in a manner which will "conduce to the preservation of the public health." 70 ILCS 2605/1. The Act creates an administrative agency consisting of nine trustees (renamed commissioners) who are elected by the citizens of the State of Illinois. In addition, the Act provide[s], *inter alia* that the

Board of Commissioners shall have the authority to issue permits to users and sewage systems located within the District's jurisdiction. *See,* generally 70 ILCS 2605/1 *et seq.* The administrative apparatus put in place by the Act includes a procedure for the [District]'s "general superintendent" to bring "show cause" proceedings for alleged permit violations before the Board of Commissioners. The Act further provides that review of [the District]'s decisions is governed by the Illinois Administrative Review Law. 70 ILCS 2605/4.37.

ruled that, as a result of South Holland's move, South Holland's classification changed from that of an "existing source" of pollution to a "new source," thus subjecting South Holland to more stringent environmental regulations. The Water District requested the United States Environmental Protection Agency ("EPA") to make a formal ruling on whether South Holland was an existing source or a new source. Region V of the EPA declined to make a formal ruling, but rendered an informal "interpretative ruling" declaring that South Holland's electroplating operation at the new location was indeed a "new source." Seeking to challenge Region V's informal ruling, South Holland brought a petition for review in this court. We dismiss the petition for lack of jurisdiction.

## I. BACKGROUND

Beginning in October 1976, South Holland operated four electroplating process lines within the building located at 192 West 155th Street in South Holland, Illinois. South Holland's manufacturing operation generated toxic pollutants. These pollutants were treated by wastewater pretreatment equipment, also located at the 155th Street building, and then discharged into the sewer system of the Water District. The Water District is a "publicly owned treatment works" or "POTW." [2]

In the Spring of 1986, South Holland moved its electroplating operations to a nearby building located at 143 West 154th Street. South Holland disassembled its four existing process lines and its pretreatment equipment and reassembled the entire operation at the new location. As at the 155th Street building, the waste material generated at the 154th Street building was treated and discharged into the Water District's sewer system.

After South Holland's move, the Water District took the position that South Holland's operation was subject to more rigorous

treatment standards now as a new source with respect to its discharges into the sewer system. According to the Water District, as a result of its move to a new location, South Holland's operation became a "new source" under the EPA's regulations rather than an "existing source," which it had been classified as prior to its move. The "new source" classification subjects the manufacturing operation to stricter waste treatment standards than the "existing source" classification. South Holland believed that it remained an "existing source" because it had merely moved its existing equipment from one building to another and thus in their opinion should not be considered a "new source."

In 1993, pursuant to state law, the Water District initiated a series of administrative actions before the Water District's Board of Commissioners to determine whether South Holland was subject to the Metal Finishing Point Source Category (a pretreatment standard for "new sources"), 40 C.F.R. § 433.17, or instead, as South Holland maintained, to the less stringent Electroplating Point Source Category (a pretreatment standard for "existing sources"), 40 C.F.R. § 413.14. In September 1994, without having made a final determination, the Water District wrote to Region V of the EPA, which covers several midwestern states, and requested the EPA to make a definitive ruling on the issue of whether South Holland, after its move, should be classified as a "new source" or an "existing source." The Water District sought a ruling in the form of a "category determination," which is a formal regulatory determination of which pretreatment standard applies to a particular industrial user.[3] 40 C.F.R. § 403.6(a)(1).

Region V responded to the Water District's request by letter dated November 17, 1994. The letter stated that the time period for requesting a formal category determination had passed:

U.S. EPA does not consider this request to be a formal Request for Category Deter-

---

Letter of October 19, 1994, from South Holland to the United States Environmental Protection Agency, Region V.

**2.** A POTW is essentially a municipal sewage treatment system. *See* 33 U.S.C. § 1292(2).

**3.** "Industrial user" means essentially any non-domestic source that introduces pollutants into a POTW. *See* 40 C.F.R § 403.3(h).

mination pursuant to 40 CFR 403.6(a); there are very specific time constraints on such determination requests, which cannot be satisfied in this case.

Letter of November 17, 1994 ("Letter"), at 1. Nevertheless, Region V went on to give an informal interpretation of the applicable regulations (an "interpretative ruling") because "the results of such determinations indicate how U.S. EPA would characterize an IU [Industrial User] in the course of independent review, such as during an audit of the control authority's pretreatment program, or in a Federal enforcement action."[4] Region V concluded that South Holland became a "new source" as defined by the Clean Water Act and 40 C.F.R § 403.3(k) once it moved to the 154th Street building in 1986.

South Holland submitted additional written comments to Region V, seeking a hearing to reconsider the initial ruling. Region V responded by confirming its initial determination that South Holland's operation at the 154th Street building constituted a "new source" under the law. Thereafter, South Holland filed a petition in this court and seeks reversal of Region V's interpretative ruling.

## II. ANALYSIS

South Holland asks that we reverse Region V's interpretative ruling that South Holland is a "new source" and hence subject to the more stringent effluent limitations set forth in 40 C.F.R § 433.17. The EPA's response is twofold. First, the EPA contends that we are without jurisdiction to review its interpretative ruling. According to the EPA, the statute granting this court jurisdiction to review its decisions, Section 509(b)(1) of the Clean Water Act, 33 U.S.C. § 1369(b)(1), does not afford us jurisdiction to review the agency's informal interpretative rulings such

as the one issued in this case. Second, the EPA maintains that Region V correctly decided the issue on the merits. Because we agree with the EPA's first contention, we dismiss this petition for lack of jurisdiction and see no need to address the merits of Region V's interpretative ruling.

### A. Legal Background

Congress passed the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387, also known as the Clean Water Act, in order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To this end, Congress established a comprehensive regulatory scheme to control the direct and indirect discharge of waste and pollutants into navigable waters. To curtail indirect discharges into sewer systems and POTWs, the EPA Administrator is required to promulgate pretreatment standards for various industrial categories. 33 U.S.C. § 1317. These "categorical" pretreatment standards typically specify the maximum amounts of certain pollutants that a source in a particular industrial category may discharge into a sewer via its wastewater. Generally, "new sources" must adhere to more stringent pretreatment standards than "existing sources." Compare 40 C.F.R § 433.17 (pretreatment standards for new sources) with 40 C.F.R § 433.15 (pretreatment standards for existing sources). New sources are subject to more rigorous controls because, as a practical matter, it is much easier to design and build new equipment to meet the tougher standards than it is to upgrade existing equipment to meet those same standards. Mark C. Van Putten & Bradley D. Jackson, *The Dilution of the Clean Water Act*, 19 Univ. Mich. J.L. Ref. 863, 877 n. 60 (1986).

A particular industrial user may request a formal ruling of the EPA (called a "category

4. Region V's full explanation for providing an interpretative ruling was as follows:

Nevertheless, as in other cases where there is a disagreement between the Control Authority, in this case the [Water] District, and its IU [in this case South Holland] regarding applicable categorical standards, U.S. EPA is willing to provide an interpretation of its regulations. The same reasons underlying the formal Category Determination process at 403.6(a) are present in this case; namely that the IU may be appropriately regulated by the Control Authority in a prompt manner. Further, the results of such determinations indicate how U.S. EPA would characterize an IU in the course of independent review, such as during an audit of the control authority's pretreatment program, or in a Federal enforcement action.

Letter, at 1–2.

determination") on the applicability of its pretreatment standards. 40 C.F.R § 403.6(a)(1).[5] A POTW may also request a category determination. However, if upon promulgation of a pretreatment standard it appears that an industrial user may be subject to that particular standard, the industrial user or the relevant POTW must submit a written request for a category determination within 60 days of the promulgation of the standard. *Id.*

## B. Discussion

While the EPA maintains that we lack jurisdiction to review the interpretative ruling issued by Region V in this case, South Holland claims that we have jurisdiction to consider its petition for review under Section 509(b)(1)(C) of the Clean Water Act. Section 509(b)(1)(C) provides:

> Review of the [EPA] Administrator's action ... in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title ... may be had by any interested person in the Circuit Court of Appeals of the United States....

33 U.S.C. § 1369(b)(1).[6] The question we must address, therefore, is whether Region V's interpretative ruling constitutes "the Ad-

ministrator's action ... in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title." If it does, then we indeed do have jurisdiction to review the petition; otherwise, we do not.

South Holland directs our attention to *Modine Mfg. Corp. v. Kay*, 791 F.2d 267 (3d Cir.1986). In *Modine*, the Third Circuit addressed the issue of whether it had jurisdiction to review on direct appeal an EPA category determination made pursuant to 40 C.F.R § 403.6(a). *Id.* at 269. In considering Section 509(b)(1) as a possible source of jurisdiction, the court observed that none of its provisions allowing for judicial review were clearly applicable to a category determination. Both Modine and the EPA argued to the Third Circuit that a category determination is tantamount to the promulgation of standards and thus is directly reviewable in federal courts of appeal under Section 509(b)(1)(C). Noting that the Supreme Court favors a liberal interpretation of statutes providing for judicial review of administrative actions, the Third Circuit held that it had jurisdiction to review a category determination. *Id.* at 271.

Although South Holland offers *Modine* as authority for the proposition that we have jurisdiction to review Region V's interpreta-

5.  Section 403.6(a)(1) provides:

Within 60 days after the effective date of a Pretreatment Standard for a subcategory under which an Industrial User may be included, the Industrial User or POTW may request that the Water Management Division Director or Director, as appropriate, provide written certification on whether the Industrial User falls within that particular subcategory. If an existing Industrial User adds or changes a process or operation which may be included in a subcategory, the existing Industrial User must request this certification prior to commencing discharge from the added or changed processes or operation. A New Source must request this certification prior to commencing discharge. Where a request for certification is submitted by a POTW, the POTW shall notify any affected Industrial User of such submission. The Industrial User may provide written comments on the POTW submission to the Water Management Division Director or Director, as appropriate, within 30 days of notification.

6.  Section 509(b)(1) provides in full:

Review of the [EPA] Administrator's action (A) in promulgating any standard of performance under section 1316 of this title, (B) in making any determination pursuant to section 1316(b)(1)(C) of this title, (C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title, (D) in making any determination as to a State permit program submitted under section 1342(b) of this title, (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title, (F) in issuing or denying any permit under section 1342 of this title, and (G) in promulgating any individual control strategy under section 1314(*l*) of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person. Any such application shall be made within 120 days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such 120th day.

tive ruling, we note that in *Modine* the EPA had made a formal category determination under 40 C.F.R § 403.6(a)(1). In the present case, Region V explicitly *denied* in the November 17, 1994, letter that it was making a formal category determination. Despite this denial, South Holland contends that Region V's interpretative ruling effectively constitutes a formal category determination. According to South Holland, Region V acknowledged that the interpretative ruling "has the same effect as a 'formal' category determination under § 403.6(a)." (Appellant's Br. 22). In fact, however, Region V's letter merely noted that an interpretative ruling serves the salutary purpose of advising interested parties of how the EPA would *likely* rule if it were to make a category determination in the course of independent review or during a federal enforcement action. *See supra* note 4. The fact that both an interpretative ruling and a category determination provide insight into the EPA's views on an issue does not transform the former into the latter. As Region V's letter stated, "there are very specific time constraints on [category] determination requests, which cannot be satisfied in this case." In light of these time constraints, we do not agree with South Holland that Region V's letter was, in effect, a formal category determination. Hence, *Modine* fails to support South Holland's position that we have jurisdiction to review Region V's interpretative ruling.

In our view, a more suitable analogy can be found in *American Paper Institute v. EPA,* 882 F.2d 287 (7th Cir.1989). In that case, Region V of the EPA issued a policy statement concerning dioxin discharges from pulp and paper mills. The American Paper Institute sought review of Region V's policy statement, believing it to be too onerous. The EPA argued that the policy statement was not reviewable under Section 509(b)(1)(E) of the Clean Water Act, which at the time provided:

> Review of the Administrator's action ... in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, or 1316 of this title ... may be had by any interested person in the Circuit Court of Appeals of the United States....

We agreed and determined that Section 509(b)(1)(E) did not cover Region V's policy statement. Initially, we noted that, under Section 509(b)(1), it is the EPA Administrator's actions that are reviewable and that Region V is not the "Administrator" of the EPA. Second, we stated that neither Region V nor the Administrator had "promulgated" anything:

> Promulgation means issuing a document with legal effect. Region V's policy statement has none: it does not appear in the Federal Register and will not be codified in the Code of Federal Regulations.... Region V told the states how it thought it might react to particular proposals, but telegraphing your punches is not the same as delivering them.

*Id.* at 288–89. Third, we concluded that the policy statement was not "an effluent limitation or other limitation" under § 509(b)(1)(E). We reasoned that Region V's policy statement was not a "limitation" within the meaning of Section 509(b)(1)(E) because it was advisory, and thus it had no independent legal effect. *Id.* at 289.

The same reasoning that we applied to Region V's policy statement in *American Paper Institute* applies with equal force in the present case to Region V's interpretative ruling. Since Region V's interpretative ruling has not been adopted by the EPA, the ruling cannot be considered the "Administrator's action." Second, like the policy statement at issue in *American Paper Institute,* Region V's interpretative ruling was not "promulgated." South Holland does not suggest that the interpretative ruling will either appear in the Federal Register or be codified in the Code of Federal Regulations. Thus, it has no independent legal or precedential effect. Third, the interpretative ruling is not an "effluent standard, prohibition, or pretreatment standard." Instead, the ruling is Region V's opinion concerning which pretreatment standard the EPA would deem applicable to South Holland based on whether South Holland is a "new source" or an "existing source."

South Holland does not discuss *American Paper Institute* in its submissions to us. However, at oral argument, South Holland attempted to distinguish *American Paper*

*Institute* on the ground that it involved a general policy statement rather than an interpretative ruling on a specific set of facts concerning a particular industrial user. Although South Holland referred to this distinction, it did not explain why the distinction matters. Under Section 509(b)(1), only certain actions of the Administrator are reviewable, and Region V's issuance of an interpretative ruling does not qualify as one of them. Regardless of how case-specific Region V's interpretative ruling may be, the fact remains that the ruling (1) is still not a decision by the "Administrator," (2) was never "promulgated," and (3) is not an "effluent standard, prohibition, or pretreatment standard." Hence, *American Paper Institute* is on point and compels the conclusion that we do not have jurisdiction to review South Holland's petition under Section 509(b)(1)(C).

### III. CONCLUSION

Because Region V's interpretative ruling is not a formal category determination and does not otherwise qualify for review under Section 509(b)(1) of the Clean Water Act, we conclude that we lack jurisdiction to entertain South Holland's petition for review. Accordingly, since we are without jurisdiction to consider South Holland's petition for review, the petition for review is DISMISSED.